## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE PROCTER & GAMBLE COMPANY and THE GILLETTE COMPANY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. NO.: 06-443-GMS |
| SUSAN HARRISON; WILLIAM G. HARRISON III, individually and as a Trustee for the Harrison Family Trust and The Emily Waldrip Trust; CINDY NOSSER; KATHY ALLEN; PAT ALLEN; TINA HARRISON; W.G. HARRISON IV; LARRY LUXENBERG; and JOHN SHELTON, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS THE PROCTER & GAMBLE COMPANY'S AND THE GILLETTE COMPANY'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

OF COUNSEL:
D. Jeffrey Ireland
Brian D. Wright
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Telephone: (937) 227-227-3710
Telecopier: (937) 227-3717
E-Mail: djireland@ficlaw.com

Date: October 26, 2006

Allen M. Terrell, Jr. (#709)
Anne Shea Gaza (#4093)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551
Telephone: (302) 651-7539
Facsimile: (302) 498-7539
E-Mail: Terrell@rlf.com
E-Mail: Gaza@rlf.com
*Attorneys for Plaintiffs*
*The Procter & Gamble Company and*
*The Gillette Company*

## TABLE OF CONTENTS

TABLES OF AUTHORITIES ............................................................................................. iii

STATEMENT OF THE NATURE AND STAGE OF PROCEEDING ................................ - 1 -

SUMMARY OF ARGUMENT ......................................................................................... - 5 -

STATEMENT OF FACTS ............................................................................................... - 7 -

ARGUMENT ................................................................................................................... - 10 -

I.    THE "FIRST-FILED" RULE SHOULD NOT BE APPLIED IN THIS CASE ................ - 10 -

      A.    Defendants' Request that this Court Dismiss, Transfer, or Stay This
            Matter Because of the Pendency of the Texas Lawsuit is Directly
            Contrary to the Parties' Agreement ................................................................. - 10 -

      B.    The "First-Filed" Rule Should Not Be Used to Condone or Forum
            Shopping ........................................................................................................... - 12 -

            1.    Defendants Have Engaged In Forum Shopping ....................................... - 12 -

            2.    Procter & Gamble is a Party to the Agreement and Can Enforce
                  the Exclusive Jurisdiction and Mandatory Venue Provisions ................ - 16 -

            3     Even as a Nonsignatory, Procter & Gamble Can Enforce the
                  Exclusive Jurisdiction and Mandatory Venue Provisions ..................... - 18 -

      C.    The "First-Filed" Rule Should Not Apply Because a Delaware Court
            Needs to Determine the Issues in This Dispute ................................................ - 21 -

II.   THIS COURT SHOULD EXERCISE ITS DISCRETION AND ACCEPT
      JURISDICTION OVER BOTH GILLETTE'S AND PROCTER & GAMBLE'S
      CLAIM FOR DECLARATORY RELIEF ........................................................................ - 22 -

      A.    The Breadth of the Texas Lawsuit Weighs in Favor of This Court
            Exercising Its Discretion ................................................................................. - 23 -

      B.    The Texas Court Proceedings Are Inadequate and Not a Proper Forum
            for Determining the Issues in this Matter ........................................................ - 24 -

      C.    The Texas Court Will Be In No Better Position (and Arguably in a
            Worse Position) to Review the Agreement Under Delaware Law ................... - 25 -

      D.    Additional Factors Weigh In Favor of This Court Exercising Its
            Discretion ......................................................................................................... - 25 -

            1.    A Ruling by the Texas Court Would Not Definitively Resolve
                  the Dispute .............................................................................................. - 26 -

            2.    The Public Interest Will Be Served By Deciding This Matter ................ - 26 -

3.    The Convenience of the Parties Weights in Favor of Deciding This Dispute .................................................................................. - 27 -

4.    The Availability and Convenience of Other Remedies Weighs in Favor of Deciding This Dispute .................................................. - 27 -

III.    UNDER THE TERMS OF THE AGREEMENT, PROCTER & GAMBLE HAS STANDING AND IS A PARTY TO THE AGREEMENT ........................... - 27 -

IV    PROCTER & GAMBLE AND GILLETTE HAVE ADEQUATELY PLED A BREACH OF CONTRACT CLAIM AGAINST DEFENDANTS ................... - 28 -

V.    CONCLUSION .................................................................................. - 29 -

## TABLE OF AUTHORITIES

**I.    FEDERAL CASES**

Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd, 364 F.3d 884
    (7th Cir. 2004) ............................................................................................................... 18

Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc., 265 F. Supp. 2d 445
    (D. Del. 2003) ............................................................................................................... 21

Ciena Corp. v. Nortel Networks Inc., No. 2:05 CV 14, 2005 U.S. Dist. LEXIS
    20095 (E.D. Tex. May 19, 2005) ................................................................................ 26

Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190 (3d Cir.) ................. 19

Columbia Plaza Corp. v. Sec. Nat'l Bank, 525 F.2d 620 (D.C. Cir. 1975) ...................... 12

EEOC v. Univ. of Pa., 850 F.2d 969 (3d Cir. 1988). ................................................. 10, 12, 14

Forum Ins. Co. v. Nat'l Union Fire Ins. Co., 865 F.2d 584
    (3d. Cir. 1989) .............................................................................................................. 18

Hadley v. Shaffer, No. 99-144, 2003 U.S. Dist. LEXIS 14106
    (D. Del. Aug. 12, 2003) ........................................................................... 18,19, 20, 21

Hugel v. Corp. of Lloyd's, 999 F.2d 206 (7th Cir. 1993) ................................................ 20

Jordan V. SEI Corp., C.A. No. 96-1616, 1996 U.S. Dist. LEXIS 7627
    (E.D. Pa. June 4, 1996) ................................................................................................ 20

Langes v. Green, 282 U.S. 531 (1931) ............................................................................. 12

Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421 (2d Cir. 1965) ..................................... 12

Organ v. Byron, 435 F. Supp. 2d 388 (D. Del. 2006) ...................................... 17, 18, 26

Orthmann v. Apple River Campground, Inc., 765 F.2d 119(8th Cir. 1985). ................... 10

Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93 (9th Cir. 1982) ............................ 10

RGC Int'l Investors, LDC v. ARI Network Servs., Inc., C.A. No. 03-003-SLR,
    2003 U.S. Dist. LEXIS 13762 (D. Del July 31, 2003) ............................................... 24

Ricoh Co., Ltd. v. Aeroflex Inc., 279 F. Supp. 2d 554 (D. Del. 2003) ............................ 22

Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 (1988) ................................................... 26

Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213 (3d Cir. 1989) .............................. 23

RLF1-3075029-1

United States Surgical Corp. v. Litvack, No. Civ. A. 99-88-GMS,
1999 WL 33220034 (D. Del. Dec. 30, 1999) ............................................................. *passim*

Zapways.com, Inc. v. Xerox Corp., Case No. 01cv10123(GBD), 2002 U.S. Dist.
LEXIS 1887, at *4-5 (S.D.N.Y. 2002) ...................................................................... 3

**II.    STATE CASES**

Capital Group Companies, Inc. v. Armour, C.A. No. 442-N, 2004 Del.Ch.
LEXIS 159 (Del. Ch. Oct. 29, 2004) ......................................................................... 18

DeBakey Corp. v. Raytheon Serv. Co., C.A. No. 14947, 2000 Del. Ch.
LEXIS 129 (Del Ch. Aug. 25, 2000) ......................................................................... 14-15

Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728
(Del. 2006) ............................................................................................................... 11

Shearin v. E.F. Hutton Group, Inc., 652 A.2d 578 (Del. Ch. 1994) ............................ 14

Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood, 752 A.2d
1175 (Del. Ch. 1999) ................................................................................................ 14

**III.   STATUTES**

28 U.S.C. § 2201(a) ...................................................................................................... 22

**IV.    OTHER AUTHORITIES**

10A Wright & Miller, § 2758 ........................................................................................ 27

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDING

This case is about Defendants'[1] sale of their interest in Zooth, Inc. to Plaintiff The Gillette Company ("Gillette") for $27.8 million, and their claim that the amount of deferred compensation that they are receiving under the terms of their Agreement[2] is insufficient. Defendants simply want more.

Defendants' deferred compensation is governed by an Agreement that contains an explicit waiver of the right to a jury trial and exclusive jurisdiction and mandatory venue provisions. In order to try and get more money from Gillette or Plaintiff The Procter & Gamble Company ("Procter & Gamble"), Defendants violated the Agreement and engaged in blatant forum shopping by filing a lawsuit against Procter & Gamble for tortious interference and demanding a jury trial in state court in Texas on June 2, 2006 (the "Texas lawsuit"). Rather than serving the complaint and proceeding with the Texas lawsuit, Defendants demanded to meet and negotiate for more money — first from representatives from Gillette and then from Procter & Gamble's internal counsel.[3]

Given the jury trial waiver and the exclusive jurisdiction and mandatory venue provisions of the Agreement and Defendants' naked desire for more money, Gillette and Procter

---

[1] Susan Harrison, William G. Harrison III, individually and as a Trustee for the Harrison Family Trust and The Emily Waldrip Trust, Cindy Nosser, Kathy Allen, Pat Allen, Tina Harrison, W.G. Harrison IV, Larry Luxenberg, and John Shelton (collectively "Defendants").

[2] Stock Purchase Agreement Dated as of June 4, 2004 Among The Gillette Company, Zooth, Inc., and The Seller and Option Holder Parties Hereto ("Agreement"), § 2.2.1, attached to Plaintiffs' Complaint as Exhibit A. Significantly, Defendants do not include all of the former shareholders of Zooth, Inc.

[3] Declaration of Paul Franz, dated October 25, 2006, filed contemporaneously with this brief and referenced as "Franz Decl."

& Gamble informed Defendants that: (a) the filing of the Texas lawsuit was a breach of the Agreement and (b) Procter & Gamble and Gillette would seek to protect their rights.[4]

As Defendants concede, Gillette and Procter & Gamble "never agreed to any kind of a standstill." Chaiken Decl., ¶ 8 (attached to the Appendix to Defendants' Motion to Dismiss). Accordingly, Gillette and Procter & Gamble filed this lawsuit on July 21, 2006, in Delaware, the only jurisdiction that they could under the terms of the Agreement.[5]

Defendants' argument that this matter should be dismissed, transferred, or stayed because of the pendency of the Texas lawsuit should be rejected as it is directly contrary to the terms of the Agreement. Defendants' Opening Brief in Support of Motion to Dismiss ("Defendants' Brief"), pp. 11-15, D.I. 28). Defendant unambiguously agreed "not to assert, by way of motion, as a defense or otherwise, . . . that any such Action brought in one of the [Delaware] courts . . . should be stayed by reason of the pendency of some other proceeding in any other court other than one of the [Delaware] courts, or that this Agreement or the subject matter hereof may not be enforced in or by such court." Agreement, § 12.12.1 (emphasis added). Defendants' argument is contrary to the terms of the Agreement, and, for that reason alone, it should be rejected.

---

[4] July 13, 2006 letter from Mr. Ireland to Mr. Chaiken. (Attached as Exhibit 1 to the Declaration of D. Jeffrey Ireland, dated October 25, 2006, filed contemporaneously with this brief and referenced as "Ireland Decl.").

[5] Procter & Gamble also removed the Texas lawsuit to the United States District Court for the Northern District of Texas and moved to dismiss the Texas lawsuit for lack of subject matter jurisdiction, improper venue, and the failure to state a claim upon which relief may be granted. In the alternative, Procter & Gamble asked the U.S. District Court to transfer the Texas lawsuit to this Court. Motion of Defendant The Procter & Gamble Company to Dismiss Plaintiffs' Complaint, Transfer, or Stay. (Ireland Decl. Ex. 2)

- 2 -

Defendants' "first-filed" arguments should be rejected because they unambiguously agreed that all "Actions" (including those in contract and tort) such as this would be brought in Delaware. More specifically, Defendants agreed to "irrevocably submit[] to the exclusive jurisdiction of the state courts of the State of Delaware or the United States District Court located in the State of Delaware for the purpose of any Action between the parties arising in whole or in part under or in connection with this Agreement." Id. (emphasis added). Defendants' argument that Procter & Gamble should not be able to enforce the terms of the exclusive jurisdiction and mandatory venue provisions fails as the Agreement contemplates that Gillette could be acquired by a company like Procter & Gamble and could designate that company to perform under the terms of the Agreement.[6]

Thus, if this Court finds that the Agreement applies to this "Action," then it should deny Defendants' Motion to Dismiss. Further, Procter & Gamble is entitled to an order preventing Defendants from proceeding in the Texas lawsuit.[7] If the Agreement applies, then Section 12.13 of the Agreement authorizes this Court, without a bond, to enter an injunction prohibiting a breach of the Agreement. In order to avoid the continuing breach of the Agreement by activity in the Texas lawsuit, this Court should enjoin Defendants from proceeding against Procter & Gamble in the Texas lawsuit.

Incredibly, after filing the Texas lawsuit improperly in the face of the above provisions, Defendants sling accusations at Procter & Gamble and Gillette that they have "clearly

---

[6] See Agreement, § 1 and the definitions of "Acquisition Transaction," p. 1. The term "Acquisition Transaction" in the Agreement was defined to include "any transaction whereby [Gillette] (a) consolidate[s] or merge[s] with or into any Person (other than an individual)." Id.

[7] See Zapways.com, Inc. v. Xerox Corp., Case No. 01cv10123(GBD), 2002 U.S. Dist. LEXIS 1887, at *4-5 (S.D.N.Y. 2002) (granting a preliminary injunction preventing defendant from proceeding with an action that they filed in the sister federal court).

engaged in inequitable conduct and blatant forum shopping." Defendants' Brief, p. 14. Yet, correspondence between counsel for Defendants and counsel for Plaintiffs shows that Defendants knew that Delaware was the proper forum for this dispute and that they had every intention of eventually pursuing their rights in this Court. On July 24, 2006, Defendants' counsel told Plaintiffs' counsel that:

> "[o]ur clients have no concern whatsoever about litigating with Gillette in Delaware. We'd have sued Gillette there eventually and did not yet do so for logistical reasons that are not relevant in, but which in part were designed to facilitate, our settlement discussions."

Ireland Decl., Exhibit 3 (emphasis added).[8]

While Defendants' counsel never revealed their "logistical reasons" that were "designed to facilitate, our settlement discussions" (id.), Defendants' reasons for filing the Texas lawsuit are clear. Defendants anticipated that the existence of a lawsuit in Texas and the cost and distraction associated with transferring it to Delaware would encourage Procter & Gamble and Gillette to simply negotiate an early end to the dispute. The fact that Defendants declined to serve the Texas lawsuit until after this lawsuit was filed and served shows that the filing of the Texas lawsuit was merely Defendants' negotiating ploy. That ploy failed, however, because the Agreement demands that this litigation be pursued in Delaware courts.

Defendants rest their arguments on their mistaken belief that Plaintiffs somehow acted improperly or in bad faith (See e.g., Defendants' Brief, pp. 3, 12, 14, 15, 18, and 23.) The

---

[8] The above-referenced statement is extracted from a July 26, 2006 letter that contains a settlement proposal, so the entirety of the letter is not attached. Ireland Decl., Ex. 3. This statement is not relevant to the parties' settlement discussion, and even if it was relevant, it is offered to show Defendants' knowledge with regard to the proper forum and for impeachment. Defendants are taking a position in their Motion on a material issue (venue) that is inconsistent with their prior statement. The letter shows that Defendants purposely elected not to file here, while reserving the right to do so later, which is inequitable conduct.

reality is that Defendants' Texas lawsuit was filed in the wrong forum based on their desire for a quick settlement. Defendants are in breach of the Agreement. More importantly, they have acted inequitably, in bad faith, and engaged in blatant forum shopping. As a result, this lawsuit should be permitted to proceed in this Court.

## SUMMARY OF ARGUMENT

1.    The "first-filed" rule should not be applied to this case as Defendants' argument that this matter should be dismissed, stayed, or transferred is directly contrary to the unambiguous and explicit language in the Agreement that matters such as this would not be dismissed, transferred, or stayed because of the pendency of another proceeding. Agreement, § 12.12.

2.    The "first-filed" rule should not be used to dismiss, stay or transfer this case because Defendants have engaged in inequitable conduct, bad faith, and blatant forum shopping by filing the Texas lawsuit rather than proceeding in the forum where they contractually agreed to resolve all disputes about the Agreement. Defendants admit that the Texas lawsuit involves issues that "aris[e] in whole or in part under or in connection with the Agreement" (id.), including whether Gillette "breach[ed] the Agreement, the interference with the Agreement and whether [Procter & Gamble] is effectively a party to the Agreement." Defendants' Brief, pp. 12 and 17 (emphasis added). The Agreement provides that those issues are governed by Delaware law and must be decided by a court in the State of Delaware. Agreement, §§ 12.11 and 12.12. It is illogical to argue that issues of breach and construction should be determined anywhere else, since the parties agreed that any "Action" involving the Agreement would be brought only in Delaware. Procter & Gamble and Gillette are Affiliates of one another, Gillette is a wholly-owned subsidiary of Procter & Gamble, and, under the terms of the Agreement, Procter & Gamble, as a designee, is a party to the Agreement. In the alternative, even if it is not considered

- 5 -

a party to the Agreement, Procter & Gamble can enforce the exclusive jurisdiction and mandatory venue provisions of the Agreement.

    3.  The "first-filed" rule should not apply because Gillette has a significant interest in participating in the litigation and cannot be added as a party to the Texas lawsuit because of the exclusive jurisdiction and mandatory venue provisions, which require any such dispute to be brought in a Delaware court.

    4.  This Court should exercise its discretion and accept jurisdiction over both Gillette's and Procter & Gamble's claim for declaratory relief. The factors articulated by this Court in U.S. Surgical Corp. v. Litvack, No. Civ. A. 99-88-GMS, 1999 WL 33220034, at *3-6 (D. Del. Dec. 30, 1999) weigh heavily in favor of this Court accepting jurisdiction and deciding the issues in this matter.

    5.  Under the terms of the Agreement, Procter & Gamble is a party to the Agreement and has standing to enforce the exclusive jurisdiction and mandatory venue provisions of the Agreement.

    6.  Since Procter & Gamble is a party to the Agreement, and can — even as a nonsignatory — enforce the exclusive jurisdiction and mandatory venue provisions, Defendants filing of the Texas lawsuit against Procter & Gamble constitutes a breach of the Agreement.

- 6 -

## STATEMENT OF FACTS

Procter & Gamble manufactures and markets a broad range of consumer products, including toothbrushes and toothpaste. Complaint, ¶ 8 ("Compl."). In 2005, Gillette, another manufacturer and marketer of consumer products, "merged" with Procter & Gamble. Defendants' Brief, p. 7. As a result of the "takeover", Procter & Gamble "acquired" Gillette. Id. Gillette and Procter & Gamble "are affiliates" (id. at p. 17), and Gillette is a wholly-owned subsidiary of Procter & Gamble. Compl., ¶ 3.

Defendants are former shareholders of Zooth, Inc. ("Zooth"), a distributor of children's toothbrushes and toothpaste. Id. ¶¶ 11-12. In the late-1990s and early 2000s, Defendants sought to sell their interest in Zooth. Id ¶ 13. Defendants contacted Gillette, and they entered into the negotiation and execution of an Agreement to purchase Defendants' interests in Zooth. Id.

All of the parties were represented by investment bankers and counsel. Id. ¶ 14. Defendants were advised and represented by investment bankers from Brown, Gibbons, Lang & Company, L.P. and lawyers from the firm of Taft, Stettinius & Hollister LLP. Id.[9] After extensive negotiations, the parties entered into a 59-page Agreement on June 4, 2004. Id ; Agreement, § 12.5.

Under the terms of the Agreement, Gillette agreed to purchase all of Defendants' interest (including all issued and outstanding shares of common stock of Zooth) for $27,815,000 in up-front cash and separate deferred consideration. Id ¶ 15; Agreement, § 2.2. Gillette agreed to pay deferred consideration to Defendants for a three-year period that was equal to "4% per

---

[9] According to the Agreement, the Taft firm was paid at least $361,287 to represent Defendants in the transaction. Agreement, § 2.4(e).

annum of Net Sales of Zooth Brand Products" and "4% per annum of Net Sales of Design

Portfolio Products." Compl., ¶ 16; Agreement § 2.2.1(b). The deferred consideration is subject

to a formula and will generate additional minimum consideration of at least $3 million, but with a

maximum of $12 million. Compl., ¶ 16; Agreement § 2.2 (p. 8 ("Minimum Earnout Balance")

and p. 13 (Maximum Payout Provision)).

        The parties agreed to certain waivers and exclusive jurisdiction and mandatory

venue provisions in the event there was ever a dispute that arose "in whole or in part under or in

connection with the Agreement." Compl., ¶¶ 5-6 and 23; Agreement, §§ 12.12 and 12.14. More

specifically, the parties agreed:

> **"TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW THAT CANNOT BE WAIVED, THE PARTIES HEREBY WAIVE AND COVENANT THAT THEY WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY ACTION ARISING IN WHOLE OR IN PART UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE CONTEMPLATED TRANSACTIONS, WHETHER NOW OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE."**

Compl., ¶ 23; Agreement, § 12.14 (emphasis in original).

        The parties also agreed that all Actions (including those in contract and tort)

would be "irrevocably submit[ed] to the exclusive jurisdiction of the state courts of the State of

Delaware or the United States District Court located in the State of Delaware for the purpose of

any Action between the parties arising in whole or in part under or in connection with this

Agreement[ ]" Compl., ¶ 5; Agreement, § 12.12 (emphasis added). If an Action was brought in

any court other than one of the courts listed above, then they

> "agree[d] not to assert, by way of motion, as a defense or
> otherwise, . . . that any such Action brought in one of the above-
> named courts . . . should be stayed by reason of the pendency of

- 8 -

> some other proceeding in any other court other than one of the
> above-named courts, or that this Agreement or the subject matter
> hereof may not be enforced in or by such court[.]"

Agreement, § 12.12 (emphasis added). The parties agreed "not to commence any such Action

other than before one of the above-named courts. Id. (emphasis added).

On October 1, 2005, Gillette became a wholly-owned subsidiary of Procter &

Gamble, and they both became Affiliates of one another. Compl., ¶ 24. Procter & Gamble also

became a permitted assign and Affiliate under the terms of the Agreement. Id.; Agreement,

§ 12.2. The Agreement provides that "[Gillette] may (a) assign any or all of its rights and

interests hereunder to one or more of its Affiliates, and (b) designate one or more of its Affiliates

to perform its obligations hereunder, in each case, so long as [Gillette] is not relieved of any

Liability hereunder." Compl., ¶ 25; Agreement, § 12.2.[10]

Procter & Gamble and Gillette have performed (and are continuing to perform)

their obligations under the terms of the Agreement and have paid Defendants the required

compensation under the deferred consideration provisions. Compl., ¶¶ 26-27. Defendants,

however, have not performed as agreed, and Procter & Gamble and Gillette filed this lawsuit on

July 21, 2006 for breach of contract and declaratory relief.

Defendants now move to dismiss this Action asserting, among other things, that

the "first-filed" rule requires that this Action be dismissed, stayed or transferred. Defendants'

Brief, pp. 11-15. Defendants also ask this Court to decline to exercise jurisdiction under the

---

[10] The Agreement among Gillette, Zooth, and Defendants anticipated that Gillette might
consolidate or merge into another company. Compl., ¶ 20. The term "Acquisition Transaction"
in the Agreement was defined to include "any transaction whereby [Gillette] (a) consolidate[s] or
merge[s] with or into any Person (other than an individual)." Id. ¶ 20; Agreement, p. 1. Other
than payment of minimum deferred compensation, the Agreement imposed no restrictions on, and
articulated no standards for, the conduct of the Zooth business by Gillette or its Affiliates that
would affect deferred compensation. Compl., ¶ 21.

- 9 -

Declaratory Judgment Act (Defendants' Brief, pp 15-18), to dismiss Procter & Gamble's claim

for breach of contract because it does not have standing to assert a claim for breach, and to

dismiss Procter & Gamble's and Gillette's claim for breach of contract because the Texas lawsuit

is not a breach of the exclusive jurisdiction and mandatory venue provisions of the Agreement

(Defendants' Brief, pp 18-23).

      For the reasons below, Defendants' arguments are without merit and its Motion to

Dismiss should be denied in its entirety.

## ARGUMENT

## I.    THE "FIRST-FILED" RULE SHOULD NOT BE APPLIED IN THIS CASE

      The first-filed rule "is not a rigid or inflexible rule to be mechanically applied."

EEOC v. Univ. of Pa., 850 F 2d 969, 976 (3d Cir. 1988), aff'd, 493 U.S. 182 (1990) (citing

Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982); Orthmann v. Apple River

Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985). Defendants ask this Court to apply the rule

mechanically. District Courts have discretion to retain jurisdiction given appropriate

circumstances justifying a departure from the rule. EEOC, 850 F.2d at 971. Those circumstances

are present here.

### A.    Defendants' Request that this Court Dismiss, Transfer, or Stay This Matter Because of the Pendency of the Texas Lawsuit is Directly Contrary to the Parties' Agreement

      Based upon the "first-filed" rule, Defendants move this Court to dismiss this case

because of the pendency of the Texas lawsuit. Defendants' Brief, pp. 11-15. Defendants ignore

the unambiguous language in the Agreement that this case cannot be dismissed, transferred or

stayed because of the pendency of another proceeding. Agreement, § 12.12. Defendants' Motion

in itself is another breach of the Agreement. The explicit language in that Agreement negates

Defendants' argument that the "first-filed" rule should be applied.

- 10 -

As Defendants state, "[w]hen interpreting a contract under Delaware law, the role of the court is to effectuate the parties' intent." Defendants' Brief, p. 10 (citing <u>Lorillard Tobacco Co. v. Am. Legacy Found.</u>, 903 A.2d 728 (Del. 2006)). "Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it." <u>Id</u>. at 739 (citations omitted). While Defendants selectively quote and misinterpret the language in the Agreement to assert that the Texas Court should decide issues that are reserved for Delaware courts, they also ignore pertinent and unambiguous language in the Agreement that negates their own argument.

Defendants unambiguously "agree[d] not to assert, by way of motion, as a defense or otherwise, . . . that any such Action brought in one of the [Delaware] courts . . . <u>should be stayed by reason of the pendency of some other proceeding in any court other than one of the above-named courts</u>." Agreement, § 12.12.1 (emphasis added). Defendants also "agree[d] not to assert, by way of motion, as a defense or otherwise . . . that this Agreement or the subject matter hereof <u>may not be enforced in or by such court</u>." <u>Id</u>. (emphasis added).

Defendants now assert that this matter should be dismissed, stayed or transferred because of the pendency of the Texas lawsuit and that, because of the pendency of that lawsuit, the subject matter of the Agreement should not be enforced by this Court. Defendants' Brief, pp. 11-15. Repeatedly in Defendants' Brief, Defendants demand that Gillette and Procter & Gamble be bound by the terms of the Agreement (as they mistakenly construe them). Defendants' Brief, pp. 10-11. Gillette and Procter & Gamble demand no less. Defendants agreed unambiguously that the pendency of another lawsuit would <u>not</u> affect any lawsuit in a Delaware court that sought to enforce the parties' rights under the terms of the Agreement. Defendants should be bound by the explicit terms of their Agreement. Their argument is improper, in violation of the parties' Agreement, and should be rejected.

**B.    The "First-Filed" Rule Should Not Be Used to Condone or Forum Shopping**

**1.    Defendants Have Engaged In Forum Shopping**

Filing the Texas lawsuit and not proceeding in the forum where Defendants agreed to resolve all disputes is forum shopping. Ignoring their own inequitable conduct and hurling accusations at Procter & Gamble about alleged "inequitable conduct and blatant forum shopping," Defendants ask this Court to use the "first-filed" rule to "dismiss, stay, or transfer [Procter & Gamble]'s suit against Defendants." Defendants' Brief, pp. 14-15. Defendants' request should be rejected.

"The letter and spirit of the first-filed rule [is] grounded on equitable principles." EEOC, 850 F.2d at 977 (citing Columbia Plaza Corp. v. Sec. Nat'l Bank, 525 F.2d 620, 621 (D.C. Cir. 1975)). In exercising its discretion, the Court "must act 'with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.'" EEOC, 850 F.2d at 977 (citing Langnes v. Green, 282 U.S. 531, 541 (1931)).[11] Courts have consistently recognized that the "first-filed" rule should not apply when the party seeking to enforce the rule has engaged in "inequitable conduct, bad faith, or forum shopping." EEOC, 850 F.2d at 972. "[F]orum shopping ha[s] always been regarded as proper bases for departing from the [first-filed] rule." Id. at 976 (citing Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421, 424 n.4 (2d Cir. 1965)).

Defendants filed the Texas lawsuit, on June 2, 2006, against Procter & Gamble because they were unhappy with the amount of deferred consideration they anticipated receiving

---

[11] Defendants cite EEOC v. Univ. of Pa., 850 F.2d 969 for the proposition that departure from the first-filed rule occurs only in "extraordinary circumstances." Defendants' Brief, p. 12. In EEOC, the Third Circuit held that the second filed case should proceed, where, as here, the first filed case was filed only to forum shop and avoid bad precedent.

- 12 -

under the Agreement. At the time, Defendants knew that the Agreement upon which that lawsuit

is based provides that all "Actions" (including those in contract and tort) should be brought in a

Delaware court. Agreement, § 12.12. Defendants simply ignored the exclusive jurisdiction and

mandatory venue provisions of the Agreement when they filed suit in Texas.

Defendants' argument that the exclusive jurisdiction and mandatory venue

provisions do not apply is based, in large part, on the mistaken assertion that Delaware is an

improper forum to decide this matter because the Texas lawsuit was "first-filed." Delaware,

however, is the proper forum — the only proper forum — to interpret the Agreement and issues in

this dispute between Procter & Gamble, Gillette, and Defendants.

Defendants admit that the Texas lawsuit involves issues that "aris[e] in whole or

in part under or in connection with this Agreement" (Agreement, § 12.12), including whether

Gillette "breach[ed] the Agreement, the interference with the Agreement and whether [Procter &

Gamble] is effectively a party to the Agreement." Defendants' Brief, pp. 12 and 17 (emphasis

added). The parties' Agreement provides unambiguously that Delaware law must apply to all

Actions that "aris[e] in whole or in part under or in connection" with the parties' Agreement.

Agreement, § 12.11. The Agreement is unequivocal that:

> "the rights of the parties and all Actions arising in whole or in
> part under or in connection herewith, will be governed by and
> construed in accordance with the domestic substantive laws of
> The State of Delaware, without giving effect to any choice or
> conflict of law provision or rule that would cause the application
> of the laws of any other jurisdiction."

Id.

Those same contractual issues must be decided by a Delaware court. Agreement,

§ 12.12.1. Defendants "irrevocably [agreed to] submit[] to the exclusive jurisdiction of the state

courts of the State of Delaware or the United States District Court located in the State of

- 13 -

Delaware for the purposes of <u>any Action between the parties arising in whole or in part under or in connection with this Agreement.</u>" <u>Id</u>. (emphasis added).

Defendants violated the terms of the Agreement and engaged in blatant forum shopping by filing the Texas lawsuit.[12] Defendants filed their lawsuit in Texas in order to avoid Delaware legal authority that would bar their claim.[13] In Delaware, a parent cannot tortiously interfere with its subsidiary's agreement:

> "<u>It is not unfair to regard a parent and its wholly owned subsidiary as a single economic unit</u>. Beginning with that premise, courts have reasoned that just as an entity cannot be liable for interfering with the performance of its own contract, <u>a parent cannot be liable for interfering with the performance of a wholly owned subsidiary</u>."

<u>Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood</u>, 752 A.2d 1175, 1183 (Del. Ch. 1999) (citations omitted) (granting defendants' motion to dismiss) (emphasis added); <u>Shearin v. E.F. Hutton Group, Inc.</u>, 652 A.2d 578, 590 (Del. Ch. 1994) ("Under this theory, 'interference' by a parent in the performance of contractual obligations of its wholly-owned subsidiary, no matter how aggressive, is not actionable."). Here, the merger and takeover of Gillette by Procter & Gamble bars Defendants' tortious interference claim.

Under Delaware law, "a showing of tortious interference with contract requires, among other things, that there be a breach of the contract." <u>DeBakey Corp. v. Raytheon Serv.</u>

---

[12] Defendants ignore the explicit choice of law provision (<u>see</u> infra fn. 19) that provides that Delaware law applies to any Action (whether in contract or tort), <u>without</u> "giving effect to any choice or conflict of law" analysis. Agreement, § 12.11; Plaintiffs' Brief in Support of Response to Defendant The Procter & Gamble Company's Motion to Dismiss, Transfer, or Stay, pp. 18-20 (Ireland Decl. Ex 4)

[13] <u>EEOC v. Univ. of Pa.</u>, 850 F.2d at 978 (refusing to apply the "first-filed" rule, citing plaintiffs' attempts to avoid contrary authority as support for not applying the rule, and stating that the "effort to evade a decision in this Circuit violates the equitable basis for the [first-filed] rule, and creates several problems that cannot be ignored").

Co., C.A. No. 14947, 2000 Del. Ch. LEXIS 129, at *62 (Del Ch. Aug. 25, 2000). Defendants

have never alleged (nor could they) that Gillette breached the terms of the parties' Agreement.

Absent any breach (or any allegation of a breach), Defendants knew that their claim for tortious

interference with contract against Procter & Gamble would fail immediately in a Delaware

court.[14]

        After filing the Texas lawsuit improperly in the face of the exclusive jurisdiction

and mandatory venue provisions, Defendants now accuse Procter & Gamble and Gillette of

"clearly engage[ing] in inequitable conduct and blatant forum shopping." Defendants' Brief, p.

14. Procter & Gamble and Gillette, however, have acted properly by seeking relief from this

Court in deciding issues related to interpretation of the Agreement, and the parties' rights under it.

        Defendants' correspondence reveals that Delaware is the proper forum to decide

this dispute and that they had every intention of eventually pursuing their rights in this Court.

Ireland Decl., ¶ 5, Ex. 3 ("We would have sued Gillette there eventually and did not yet do so for

logistical reasons that are not relevant in, but which in part were designed to facilitate our

settlement discussions.")

        While counsel for Defendants have never revealed their "logistical reasons" that

were "designed to facilitate our settlement discussions," the reasons are obvious. Defendants

---

[14] As demonstrated in the attached Motion of Defendant The Procter & Gamble Company to
Dismiss Plaintiffs' Complaint, Transfer, or Stay, Defendants' claims should be dismissed in Texas
because their Texas pleading fails to allege a breach of the Agreement or any facts to suggest
interference. Nevertheless, Defendants contend that Texas is a friendlier forum for them to seek
their justice, rather than Delaware (the place they agreed to) where the prevailing legal authority
bars their claim. In response to Procter & Gamble's Motion to Dismiss in the Texas Court, they
have conceded that "under Texas law [unlike Delaware], it is not necessary for the interference to
cause an actual breach of the subject contract . . . ." Plaintiffs' Brief in Support of Response to
Defendant The Procter & Gamble Company's Motion to Dismiss, Transfer, or Stay, p. 21.
(Attached as Exhibit 4 to Ireland Decl.).

anticipated that the existence of a lawsuit in Texas and the costs and distraction associated with

transferring it to Delaware would encourage Procter & Gamble and Gillette to simply negotiate

an early end to the dispute. Plaintiffs' refusal to capitulate to Defendants' ill-founded and

unreasonable demands does not constitute inequitable conduct.

<div align="center">

2.    **Procter & Gamble is a Party to the Agreement and Can
      Enforce the Exclusive Jurisdiction and Mandatory Venue
      Provisions**

</div>

Defendants argue that the exclusive jurisdiction and mandatory venue provisions

do not apply to the Texas lawsuit because Procter & Gamble is not a party to the Agreement.

Defendants' Brief, pp. 12-13. Yet, Defendants admit that Procter & Gamble and Gillette are

"Affiliates" and that Procter & Gamble is a "permitted assign" under the terms of the Agreement.

Id. Defendants also admit that Gillette and Procter & Gamble have merged and that Gillette is a

wholly-owned subsidiary of Procter & Gamble. Id. at p. 7. Defendants then selectively quote

from the Agreement, ignore their own admissions about the relationship between Procter &

Gamble and Gillette, and read new language into the Agreement — the requirement of a written

assignment. Id. at pp. 12-13. Defendants contend that the absence of a formal assignment

precludes Procter & Gamble and Gillette from enforcing the exclusive jurisdiction and mandatory

venue provisions in the Agreement. Defendants' Brief, pp. 12-13. Defendants ignore the

language that recognizes that Gillette could be acquired by another company (even a company

that has a competing oral care product line) and that Gillette may designate an Affiliate (which

could include the acquiring company) to perform under the terms of the Agreement, and that

"successors" to Gillette would be deemed parties to the Agreement. Agreement, § 12.2.[15]

---

[15] It is worth noting that Gillette could assign the Agreement to Procter & Gamble at anytime
because neither notice nor permission is necessary. Gillette has not done so because Procter &
Gamble is already a permitted assignee, successor, and designee under the terms of the
Agreement. Id. A written or formal assignment is unnecessary and redundant of the Agreement.

<div align="center">- 16 -</div>

As Defendants concede, Procter & Gamble is an "Affiliate," permitted assign, and successor to Gillette. Defendants' Brief, pp. 7, 12-13. Gillette can designate that Procter & Gamble perform its obligations under the terms of the Agreement. Agreement, § 12.2. More specifically, the Agreement provides that:

> "12.2 <u>Succession and Assignment: No Third-Party Beneficiary</u>. Subject to the immediately following sentence, this Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, <u>each of which such successors and permitted assigns will be deemed to be a party hereto for all purposes hereof.</u> No party may assign, delegate or otherwise transfer either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other parties; <u>provided</u>, <u>however</u>, that the Buyer may (a) assign any or all of its rights and interests hereunder to one or more of its Affiliates, and (b) <u>designate one or more of its Affiliates to perform its obligations hereunder, in each case, so long as Buyer is not relieved of any Liability hereunder.</u> Except as expressly provided herein, this Agreement is for the sole benefit of the parties and their permitted successors and assignees and nothing herein expressed or implied will give or be construed to give any Person, other than the parties and such successors and assignees, any legal or equitable rights hereunder."

Agreement, § 12.2 (emphasis added).

Regardless of whether Procter & Gamble is characterized as a "successor," "permitted assignee," or the Affiliate designated to perform, the parties contemplated that Gillette's rights could pass to a third party that acquired it. Defendants argue that courts should not torture contractual terms to impart ambiguity (Defendants' Brief, p. 11), yet their interpretation of the Agreement does just that.[16] If Defendants believe that the deferred

---

[16] Indeed, this Court has criticized parties that sue "off the contract" in order to avoid the bargained for jurisdiction to resolve a dispute. <u>Organ v. Byron</u>, 435 F. Supp. 2d 388, 392 (D. Del. 2006). It is inconceivable that the parties would negotiate and select Delaware as the exclusive jurisdiction and mandatory venue for disputes that "aris[e] in whole or in part under or in connection" with the Agreement and intend that an affiliate of Gillette (or a purchaser of Gillette) could be sued based upon a theory that "aris[es] in whole or in part under or in connection" with
(footnote cont'd )

compensation they are receiving is insufficient — the crux of their allegations — then that claim is based upon the Agreement's performance, and Procter & Gamble (like Gillette) is entitled to enforce the exclusive jurisdiction and mandatory venue provisions.

### 3.    Even as a Nonsignatory, Procter & Gamble Can Enforce the Exclusive Jurisdiction and Mandatory Venue Provisions

Procter & Gamble can enforce the exclusive jurisdiction and mandatory venue provisions of the Agreement. Hadley v. Shaffer, No. 99-144, 2003 U.S. Dist. LEXIS 14106, at *13-19 (D. Del. Aug. 12, 2003) (enforcing forum selection clause and stating that plaintiffs "should have foreseen governance by the forum selection clause"). As this Court has recognized, a party "[cannot] avoid a forum selection clause in a contract simply 'by suing an affiliate or affiliates of the party to the contract in which the clause appears, or employees of the affiliates '" Organ v. Byron, 435 F. Supp. 2d at 391 (quoting Judge Posner in Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd., 364 F.3d 884, 889 (7th Cir. 2004); Capital Group Cos., Inc. v. Armour, C.A. No. 442-N, 2004 Del. Ch. LEXIS 159, at *20-28 (Del. Ch. Oct. 29, 2004) (holding that third party is bound by the forum selection clause).

Defendants assert that Procter & Gamble cannot, as a nonsignatory, enforce the exclusive jurisdiction and mandatory venue provisions because the Agreement disclaims any equitable right of third-parties. Defendants' Brief, pp. 13-14. Defendants cannot have it both ways. Either Procter & Gamble is a party to the Agreement and is bound by all of its terms, including the exclusive jurisdiction and mandatory venue provisions, or Procter & Gamble is not a party and is not bound by any of the Agreement's provisions. Forum Ins. Co. v. Nat'l Union Fire Ins. Co., 865 F.2d 584, 586 (3d. Cir. 1989) (finding that non-party was not bound to the

---

( . cont'd)
the Agreement in another forum besides Delaware. Defendants' argument that Procter & Gamble is not a party to and cannot enforce the exclusive jurisdiction and mandatory venue provisions defies logic and common sense.

- 18 -

terms of the agreement). If Procter & Gamble is not a party, then <u>none</u> of the provisions of the Agreement apply, including the provision cited by Defendants. Thus, either the language in the Agreement does not apply — including the disclaimers of any equitable right of third parties — and Procter & Gamble can enforce the exclusive jurisdiction and mandatory venue provisions in the Agreement under an equitable estoppel theory, or the language in the Agreement applies and Procter & Gamble is deemed a party.

In <u>Hadley v. Shaffer</u>, this Court applied a three-part inquiry to determine whether a party who is a nonsignatory to an agreement can be bound by the forum selection clause that is contained in that agreement. <u>Hadley</u>, 2003 U.S. Dist. LEXIS 14106, at *11-20. The inquiry included: (1) whether the forum selection clause is valid; (2) whether defendants are third-party beneficiaries, or are closely related to, the contract; and (3) whether the claims arise from their standing relating to the contract. <u>Id</u>.

First, Defendants have never claimed (nor could they) that the exclusive jurisdiction and mandatory venue provisions are invalid. Such provisions are presumptively valid and should be enforced by the forum unless the party objecting to its enforcement establishes that: (1) the provisions were "the result of fraud or overreaching;" (2) "enforcement would violate [the] strong public policy of the forum;" or (3) "enforcement would, [under] the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." <u>Hadley</u>, 2003 U.S. Dist. LEXIS 14106, at *11-12 (citing <u>Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.</u>, 709 F.2d 190, 202 (3d Cir.), <u>cert. denied</u>, 464 U.S. 938 (1983). Exclusive jurisdiction and mandatory venue provisions should be enforced "so long as enforcement at the time of litigation would not place any of the parties at a substantial and unfair disadvantage or otherwise deny a litigant his day in court." <u>Hadley</u>, 2003 U.S. Dist. LEXIS 14106, at *11-12 (citations omitted). Defendants have never asserted that the provisions are invalid.

- 19 -

Second, Procter & Gamble is both a third-party beneficiary under the terms of the Agreement and closely related to Gillette. To qualify as a third-party beneficiary, the contract must be "made for the benefit of that third party within the intent and contemplation of the contracting parties." Hadley, 2003 U.S. Dist. LEXIS 14106, at *14 (citations omitted). To determine whether the parties intended to make an entity a third-party beneficiary, the Court must "look to the terms of the contract and the surrounding circumstances." Id. (citations omitted). The Agreement contemplates that Gillette could be acquired by a company that has an oral care product line, like Procter & Gamble's, and could designate that company to perform under the terms of the Agreement. See supra, pp. 16-17. As a result, Procter & Gamble should be able to enforce the exclusive jurisdiction and mandatory venue provisions of the Agreement.

Even if Procter & Gamble is not considered a third-party beneficiary, Procter & Gamble should be able to enforce the exclusive jurisdiction and mandatory venue provisions as it is "closely related to the . . . Agreement, and therefore, reasonably bound by its forum selection clause." Hadley, 2003 U.S. Dist. LEXIS 14106, at *18-19 ("Forum selection clauses bind nonsignatories that are closely related to the contractual relation or that should have foreseen governance by the clause.") (citing Jordan v. SEI Corp., C.A. No 96-1616, 1996 U.S. Dist. LEXIS 7627, at *18-19 (E.D. Pa. June 4, 1996); Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209-10 (7th Cir. 1993) (binding corporations owned and controlled by contracting party). Here, Procter & Gamble, as affiliate, parent, successor, or permitted assign, is closely related to the Agreement and should be entitled to enforce the exclusive jurisdiction and mandatory venue provisions. Indeed, the Agreement mandates that Procter & Gamble have the ability to enforce the exclusive jurisdiction and mandatory venue provisions of the Agreement, since it provides that Delaware is the only permitted venue for Actions "aris[ing] in whole or in part under or in connection with" the Agreement. Agreement, § 12.12. It is undeniable that the Texas lawsuit was brought "in part or in connection with" the Agreement.

Third, Procter & Gamble should be able to enforce the exclusive jurisdiction and mandatory venue provisions as Defendants' claims in the Texas lawsuit arise from the Agreement at issue. Hadley, 2003 U.S. Dist. LEXIS 14106, at *19-20 (citations omitted). In fact, Defendants concede that the claims arise out of the Agreement. Defendants' Brief, p. 12 (asserting that whether Gillette breached "the Agreement, the interference with the Agreement and whether [Procter & Gamble] is effectively a party to the Agreement are all issues that are present in the Texas Suit"). Because the claims in this dispute are based upon, arise out of, and are undeniably "in connection with" the Agreement, Defendants are bound by the exclusive jurisdiction and mandatory venue provisions in the Agreement and this dispute must be resolved in this Court.

C.     **The "First-Filed" Rule Should Not Apply Because a Delaware Court Needs to Determine the Issues in This Dispute**

Defendants concede that a major issue in the Texas lawsuit is whether Gillette breached the Agreement. Defendants' Brief, pp. 12 and 17. As a result, Gillette has a significant interest in participating in that litigation. Gillette, however, cannot be added as a party to the Texas lawsuit because of the exclusive jurisdiction and mandatory venue provisions, which require any such dispute to be brought in a Delaware court. Thus, Gillette can only be sued in Delaware.

In similar situations, courts have allowed declaratory judgment actions to proceed even though it was the second filed action and have refused to apply the "first-filed" rule. Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc., 265 F. Supp. 2d 445, 449-50 (D. Del. 2003) (denying defendants' motion to dismiss the declaratory judgment action, or in the alterative,

to change venue).[17]  Defendants initiated this dispute by effectively threatening Gillette with a

lawsuit and demanding more money under the terms of the deferred consideration provisions of

the Agreement. Defendants are aware that any dispute over the Agreement can be decided only

in a state or federal court within Delaware, according to the explicit terms of the parties'

Agreement. Because of the exclusive jurisdiction and mandatory venue provisions, Gillette

cannot be added as a party by Defendants in the Texas lawsuit. Thus, to resolve all of the issues

in this matter, which Defendants themselves put at issue, the lawsuit must be maintained in

Delaware.

        Despite the legal labels that Defendants attach to their claims, the same facts are

at issue in both this case and the Texas lawsuit. Both disputes are based upon the deferred

compensation provisions of the Agreement and whether or not Gillette breached those provisions.

The issues of fact will not be different in any significant degree whether the dispute is resolved

here or in Texas. As a result, the "first-filed" rule should not apply, and this matter should be

permitted to proceed in this Court, which is the proper forum.

## II.      THIS COURT SHOULD EXERCISE ITS DISCRETION AND ACCEPT JURISDICTION OVER BOTH GILLETTE'S AND PROCTER & GAMBLE'S CLAIM FOR DECLARATORY RELIEF.

        The Declaratory Judgment Act provides that a District Court "may declare the

rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.

§ 2201(a). As Defendants argue (and Procter & Gamble and Gillette agree), a District Court has

---

[17] The situation faced here by Procter & Gamble and Gillette is similar to the situation faced by manufacturers in patent actions when a plaintiff initiates a lawsuit against one of its customers and the manufacture is not, and cannot be, joined as a party in that litigation. Under the "mere customer" exception to the "first-filed" rule, courts (including this Court) have routinely refused to dismiss second filed declaratory judgment actions when the "first-filed" suit cannot (or does not) include all of the parties. See Ricoh Co., Ltd. v. Aeroflex Inc., 279 F. Supp. 2d 554, 557-58 (D. Del. 2003) ("This rule, known as the 'customer suit exception,' recognizes that it is more efficient for the dispute to be settled directly between the parties in interest.") (citations omitted).

discretion in deciding whether or not to entertain a declaratory judgment action. Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc., 887 F.2d 1213, 1222 (3d Cir. 1989); Litvack, 1999 WL 33220034, at *3-6. In Terra Nova (and as articulated and followed by this Court in Litvack), the Third Circuit articulated several factors that a District Court must consider when determining whether to decline to exercise its discretion to hear a declaratory judgment action. Terra Nova, 887 F.2d at 1224. Defendants fail to analyze the Terra Nova and Litvack factors and merely rest on the same insufficient conclusions that they cite for asserting that the "first-filed" rule should be applied. An analysis of the Terra Nova and Litvack factors shows that the Court should exercise jurisdiction over the Defendants' claims for declaratory relief.

### A.     The Breadth of the Texas Lawsuit Weighs in Favor of This Court Exercising Its Discretion

When deciding whether to exercise its discretion and determining whether to stay or dismiss an action for declaratory relief, "the court should examine the adequacy of the [other] court proceeding in order to determine 'whether the [other] suit presents the same issues, not governed by federal law, between the same parties.'" Litvack, 1999 WL 33220034, at *3 (citing Terra Nova, 887 F.2d at 1224). Unlike in Litvack, this matter involves more issues and more parties than the Texas lawsuit.[18] In particular, in addition to the tortious interference issues, Procter & Gamble and Gillette also allege breach of contract claims against Defendants. Importantly, because of the exclusive jurisdiction and mandatory venue provisions and choice of law provision of the Agreement, a Delaware court must decide those issues, and the breach of contract issues cannot be brought in the Texas Court.

---

[18] While the Texas lawsuit also involves Zooth's lawyers, Taft, Stettinius & Hollister LLP, that claim is contingent on the success of Defendants' tortious interference cause of action against Procter & Gamble. More specifically, Defendants' negligence claim against the Taft firm has a possibility of success only if Plaintiffs' tortious interference claim fails.

Similarly, this matter involves more parties. Unlike the Texas lawsuit, Gillette is a party to this action. As discussed above (supra, pp. 21-22), Gillette has a significant interest in participating in this litigation, and it cannot be added as a party to the Texas lawsuit because of the exclusive jurisdiction and mandatory venue provisions. As a result, the breadth of this litigation weighs in favor of this Court exercising its discretion to determine Procter & Gamble's and Gillette's claims for declaratory relief.[19]

**B.     The Texas Court Proceedings Are Inadequate and Not a Proper Forum for Determining the Issues in this Matter**

The Court must also "be convinced that the [other] proceeding will serve as an adequate forum for determining and protecting the rights of the parties" before it declines to exercise jurisdiction over a declaratory judgment action. Litvack, 1999 WL 33220034, at *3 (citations omitted). Similarly, the Court must be convinced that all of the parties in this case will be able to raise their claims or defenses in the Texas lawsuit. Id. Unlike in Litvack, the Texas Court will not be able to satisfactorily resolve the claims of all of the interested parties. As previously discussed (supra, pp. 13-14), the Agreement between the parties contains exclusive jurisdiction and mandatory venue provisions, and disputes about the Agreement must be decided by a Delaware court. The Texas court cannot determine Gillette's (or Procter & Gamble's) breach of contract claims. Thus, it is an inadequate forum for determining and protecting the rights of the parties. Like the first factor, this factor weighs heavily in favor of this Court exercising its discretion and determining Procter & Gamble's and Gillette's claims for declaratory relief.

---

[19] See RGC Int'l Investors, LDC v. ARI Network Servs., Inc., C.A. No. 03-003-SLR, 2003 U.S. Dist. LEXIS 13762, at *3-6 (D. Del. July 31, 2003) (denying defendants' motion to dismiss, rejecting defendants argument that the Court should stay the case pending the resolution of a parallel action, and holding that the forum selection clause in the contract between the parties is valid and enforceable.)

C.    **The Texas Court Will Be In No Better Position (and Arguably in a Worse Position) to Review the Agreement Under Delaware Law**

The Court must also consider "whether state or federal law governs this dispute."
Litvack, 1999 WL 33220034, at *4. Like in Litvack, Delaware law governs the interpretation of
the Agreement. Id.; Agreement, § 12.11.[20] As the Court stated in Litvack, "this Court might be
more familiar with the underlying principles of Delaware law which govern this dispute."
Litvack, 1999 WL 3322034, at *4. While this factor does not weigh heavily in favor of this Court
exercising jurisdiction (as the Texas Court can apply Delaware law to the dispute), given the
other factors present which support this Court accepting jurisdiction to decide this matter, it is
still preferable for this Court to decide issues of Delaware law. The fact that the Texas Court will
be in no better position (and arguably in a worse position) to review the Agreement under
Delaware law favors the exercise of discretion.

D.    **Additional Factors Weigh In Favor of This Court Exercising Its Discretion**

In addition to the factors discussed above, "this Court must also consider: (a)
whether a declaratory ruling by a federal court will resolve the uncertainty of obligation which
gave rise to the present controversy; (b) the public interest in settlement of the uncertainty of this
obligation; (c) the convenience of the parties in proceeding in this forum; and (d) the availability
and convenience of other remedies." Litvack, 1999 WL 3322034, at *4 (citation omitted).

---

[20] The Agreement provides that "the rights of the parties and all Actions arising in whole or in
part under or in connection herewith, will be governed by and construed in accordance with the
domestic substantive laws of the State of Delaware, without giving effect to any choice or conflict
of law provision or rule that would cause the application of the laws of any other jurisdiction."
Agreement, § 12.11.

- 25 -

1.    **A Ruling by the Texas Court Would Not Definitively Resolve the Dispute**

Because the complaint in this matter contains additional claims and parties that are not present (and cannot be joined) in the Texas lawsuit, a ruling by the Texas Court would not definitively resolve all of the disputes between the parties to this matter. Thus, this factor weighs in favor of this Court exercising its discretion and determining Procter & Gamble's and Gillette's claims for declaratory relief.

2.    **The Public Interest Will Be Served By Deciding This Matter**

As shown in this Memorandum, the parties have agreed to exclusive jurisdiction and mandatory venue provisions that select the courts in the State of Delaware to decide disputes that arise "in whole or in part under or in connection with th[e] Agreement." Agreement, § 12.12. It is untenable to argue that the Texas lawsuit does not "arise in connection with" the Agreement. The public's interest is in the enforcement of exclusive jurisdiction and mandatory venue provisions. Ciena Corp. v. Nortel Networks Inc., No. 2:05 CV 14, 2005 U.S. Dist. LEXIS 20095, at *23 (E.D. Tex. May 19, 2005) ("Public interest will be served by the injunction because public policy favors the enforcement of forum selection clauses.") (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33, (1988) (Kennedy, J. concurring) ("Enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.")). Defendants should be bound by the exclusive jurisdiction and mandatory venue provisions in the Agreement, and the public interest will be served by allowing this declaratory action to proceed. As Judge Farnan recognized in Organ v. Byron, parties should not be allowed to gut a forum selection clause by filing a lawsuit against an officer of the signatory corporation outside of the selected forum in the contract. 435 F. Supp. 2d at 391 ("The result of allowing the Plaintiff to avoid a choice of law provision to which he is contractually bound by filing a complaint against an employee of the signatory rather than the signatory itself is

- 26 -

no less unfair than allowing him to dodge the forum selection clause in the same manner Plaintiff bargained for the choice of law provision, and should be bound to it in court.").

### 3.    The Convenience of the Parties Weights in Favor of Deciding This Dispute

Delaware is <u>not</u> an inconvenient forum for Defendants to have the disputes about the Agreement resolved. Indeed, Defendants agreed to this forum. Agreement, § 12.12 (agreement that an Action should not be dismissed for forum non conveniens). Thus, convenience of the forum also weighs in favor of this Court exercising its discretion and determining Procter & Gamble's and Gillette's claims for declaratory relief.

### 4.    The Availability and Convenience of Other Remedies Weighs in Favor of Deciding This Dispute

As this Court stated in <u>Litvack</u>, "the discretion of a federal court [to entertain a declaratory judgment action] should not turn on so mechanical a rule" (<u>Litvack</u>, 1999 WL 33220034, at *5 (citation omitted)), and "'[t]he real question . . . is not which action was commenced first but which will most fully serve the needs and convenience of the parties and provide a comprehensive solution for the general conflict.'" <u>Id.</u> (citing <u>10A Wright & Miller</u>, § 2758 at 638). As previously shown, the Delaware lawsuit will fully resolve the issues between the parties, whereas the Texas lawsuit simply cannot do so. Thus, this factor weighs heavily in favor of this Court exercising its discretion and determining Procter & Gamble's and Gillette's claims for declaratory relief.

## III.    UNDER THE TERMS OF THE AGREEMENT, PROCTER & GAMBLE HAS STANDING AND IS A PARTY TO THE AGREEMENT

Defendants assert that Procter & Gamble "does not have standing to enforce the Agreement since it is neither a party to the Agreement nor an assignee of Gillette's interests" in the Agreement. Defendants' Brief, pp. 19-20. Defendants, however, ignore the fact that Procter & Gamble is an "Affiliate," permitted assign, and successor to Gillette. See <u>supra</u>, pp. 21-22.

- 27 -

More importantly, Defendants ignore the fact that Gillette can designate that Procter & Gamble (an undisputed Affiliate) can perform its obligations under the Agreement. Id. Gillette can designate that its parent and Affiliate perform under the terms of the Agreement without formally assigning the Agreement, and that Procter & Gamble, as a designee, can enforce the exclusive jurisdiction and mandatory venue provisions in the Agreement. Agreement, § 12.2.

Similarly, Defendants ignore the fact that even as a nonsignatory Procter & Gamble can enforce the exclusive jurisdiction and mandatory venue provisions of the Agreement. See supra, pp. 23-26. Simply put, Defendants have no right to bring any Action "aris[ing] in connection with" this Agreement against any party, other than where they agreed to do so — Delaware. Accordingly, Procter & Gamble has standing to assert a claim for breach of the Agreement, and its breach of contract claim should not be dismissed.

## IV.    PROCTER & GAMBLE AND GILLETTE HAVE ADEQUATELY PLED A BREACH OF CONTRACT CLAIM AGAINST DEFENDANTS

Based upon the same arguments cited above, Defendants assert that the filing of the Texas lawsuit against Procter & Gamble cannot constitute a breach of the exclusive jurisdiction and mandatory venue provisions in the Agreement. Defendants' Brief, pp. 20-21. Defendants ignore the fact that Procter & Gamble is an "Affiliate," permitted assign, and successor to Gillette. See supra, pp. 21-22. As set forth above, Defendants ignore the fact that Gillette can designate that Procter & Gamble perform under the Agreement. Id. No formal assignment (or any assignment at all) of the Agreement is required. Agreement, § 12.2. Procter & Gamble, as a designee, can enforce the jury trial waiver and the exclusive jurisdiction and mandatory venue provisions in the Agreement and those provisions are binding upon Defendants. Similarly, Defendants ignore the fact that even as a nonsignatory, Procter & Gamble can enforce the exclusive jurisdiction and mandatory venue provisions of the Agreement. See supra, pp. 23-

- 28 -

26. Accordingly, Procter & Gamble and Gillette have adequately pled a breach of the Agreement and their breach of contract claim should <u>not</u> be dismissed.

## V.    **CONCLUSION**

Based upon the reasons stated above, Defendants' Motion to Dismiss should be denied in its entirety, and Procter & Gamble and Gillette should be permitted to proceed with litigation of their claims in this jurisdiction.

<div style="float:right;">

*Anne Shea Gaza*

Allen M. Terrell, Jr. (#709)
Terrell@rlf.com
Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899-0551
Telephone:  (302) 651-7539
Telecopier:  (302) 498-7539

Attorneys for Plaintiffs The Procter & Gamble Company and The Gillette Company

</div>

OF COUNSEL:
D. Jeffrey Ireland
djireland@ficlaw.com
Brian D. Wright
bwright@ficlaw.com
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone:  (937) 227-3710
Telecopier:  (937) 227-3717

Dated:  October 26, 2006

- 29 -

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2006, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Daniel B. Rath, Esquire
Rebecca L. Butcher, Esquire
James S. Green, Jr., Esquire
919 Market Street, Suite 600
Wilmington, Delaware 19801

I hereby certify that on October 26, 2006, I caused to be sent by Federal Express the foregoing document to the following non-registered participant:

Kenneth B. Chaiken, Esquire
Robert Chaiken, Esquire
Chaiken & Chaiken, P.C.
One Galleria Tower
13355 Noel Rd., St. 600
Dallas, TX 75240

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700