IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE PROCTER & GAMBLE COMPANY, <u>et al</u>., | : | C.A. No. 06-443 (GMS) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SUSAN HARRISON, <u>et al</u>., | : | |
| | : | |
| Defendants. | : | |

## <u>DECLARATION OF D. JEFFREY IRELAND</u>

| | |
|---|---|
| STATE OF OHIO | ) |
| | ) SS: |
| COUNTY OF MONTGOMERY | ) |

D. Jeffrey Ireland, being first duly sworn, deposes and says:

1.     I am making this Declaration based upon personal knowledge, and I am competent to testify in the matters stated below.

2.     I am an attorney licensed to practice law in the State of Ohio, and admitted, <u>pro hac vice</u> to appear in this Court.  I am a partner in the firm of Faruki Ireland & Cox P.L.L. and trial counsel for Plaintiffs The Procter & Gamble Company ("Procter & Gamble") and the Gillette Company ("Gillette").

3.     Attached as Exhibit 1 to this Declaration, is a copy of my July 13, 2006 letter to Robert L. Chaiken, counsel for Defendants.  This letter provided Defendants with notice of the breach of the June 4, 2004 Stock Purchase Agreement between the Gillette, Zooth, Inc., and the Seller and Option Holders ("Agreement").  This letter also asked Defendants to dismiss their action in Texas by July 17, 2006.

4.     Attached as Exhibit 2 to this Declaration, is a true and accurate copy of the Motion of Defendant The Procter & Gamble Company to Dismiss Plaintiffs' Complaint, Transfer or Stay, that was submitted in the United States District Court for the Northern District of Texas, Witchita Falls Division, on August 16, 2006.

5.     Attached as Exhibit 3 to this Declaration, is a true and accurate copy of a July 24, 2006 letter from Kenneth Chaiken, one of the lawyers representing Defendants, to me. Since this letter was sent in the context of settlement discussions (and the first page of the letter states "For Settlement Purposes Only"), the letter has been redacted to eliminate any reference to actual settlement discussion. The two unredacted paragraphs of the letter that are irrelevant to the settlement discussions are included in this exhibit.

6.     Attached as Exhibit 4 to this Declaration, is a true and accurate copy of Plaintiffs' Brief in Support of Response to Defendant The Procter & Gamble Company's Motion to Dismiss, Transfer, or Stay.

Further, Declarant saith naught.

D. JEFFREY IRELAND

Sworn to before me and subscribed in my presence by the said D. Jeffrey Ireland, this 26 day of October, 2006.

Notary Public
VICKI A. JOYCE, Notary Public
In and for the State of Ohio
My Commission Expires Nov. 2, 2009

174689 1

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2006, I caused to be served by hand delivery the

foregoing document and electronically filed the same with the Clerk of Court using CM/ECF

which will send notification of such filing(s) to the following:

Daniel B. Rath, Esquire
Rebecca L. Butcher, Esquire
James S. Green, Jr., Esquire
919 Market Street, Suite 600
Wilmington, Delaware 19801

I hereby certify that on October 26, 2006, I caused to be sent by Federal Express the

foregoing document to the following non-registered participant:

Kenneth B. Chaiken, Esquire
Robert Chaiken, Esquire
Chaiken & Chaiken, P.C.
One Galleria Tower
13355 Noel Rd., St. 600
Dallas, TX 75240

Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

EXHIBIT 1

# FARUKI IRELAND & COX P.L.L.
## ATTORNEYS AT LAW

CHARLES J. FARUKI
D. JEFFREY IRELAND
JEFFREY T COX
RONALD I. RAETHER. JR
PAUL L. HORSTMAN
THOMAS R. KRAEMER
LAURA A. SANOM
JEFFREY S SHARKEY
MARTIN A FOOS

———

ROBERT P BARTLETT. JR

500 COURTHOUSE PLAZA, S.W
10 NORTH LUDLOW STREET
DAYTON· OHIO 45402

D Jeffrey Ireland
(937) 227-3710
djireland@ficlaw.com

BRADLEY D. ANDERSON
ERIN A. BAIR
JACQUELINE V BROWN
CHAD E. BURTON
DONALD E. BURTON
MELINDA K. BURTON
JOHN A. FISCHER
ROBERT W. GURAY
R. HOLTZMAN HEDRICK
ROBERT W. RIEFABER
KATHERINE A. MILTNER
MICHELE A. MURPHY
REBECCA M. OWEN
TIMOTHY G. PEPPER
K. LYNN POSEY
ANDREW J REITZ
ERIN E. RHINEHART
ADAM V SADLOWSKI
ANGELA M. SINKOVITS
NICHOLAS M SMITH
ERIC P VOIGT
KATRINA L. WAHL
BRIAN D. WRIGHT
JULIE E ZINK

July 13, 2006

*VIA FACSIMILE;*
*CONFIRMATION COPY BY REGULAR MAIL*

Robert L. Chaiken, Esq.
Chaiken & Chaiken, P.C.
One Galleria Tower
13355 Noel Road, Suite 600
Dallas, TX 75240

> Re:    Susan Harrison, et al. v. The Procter & Gamble Company, et al.,
>         Case No. 164,474-C; District Court, Wichita County, Texas

Dear Mr. Chaiken:

This letter is to provide you notice that your clients, Susan Harrison, William G. Harrison III, Cindy Nosser, Kathy Allen, Pat Allen, Tina Harrison, W.G. Harrison IV, Larry Luxenburg, John Shelton, the Harrison Family Trust, and the Emily Waldrip Trust have breached the June 4, 2004 Stock Purchase Agreement Between The Gillette Company, Zooth, Inc., and the Seller and Option Holders ("Agreement").

Section 12.12 of the Agreement provides exclusive jurisdiction to the state courts of Delaware or the United States District Court for the District of Delaware. This Section of the Agreement was breached by your clients by filing a lawsuit in the 89th District Court of Wichita County, Texas

The Procter & Gamble Company and The Gillette Company demand that your clients dismiss immediately the above-referenced action. If a dismissal entry is not returned to us by July 17, 2006, The Procter & Gamble Company and The Gillette Company will act

**Exhibit 1**

FARUKI IRELAND & COX P.L.L.

Robert L. Chaiken, Esq.
July 13, 2006
Page Two

accordingly to protect their rights under the Agreement, including the recovery of all losses,
costs, and fees associated with your clients' breach.

Very truly yours,

D. Jeffrey Ireland

DJI/vj

cc:   Taft, Stettinius & Hollister LLP (c/o George D. Molinsky, Esq. via Facsimile and
Confirmation via U.S. Mail)

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUSAN HARRISON, et al., | : | CASE NO. 7:06-CV-121-R |
| Plaintiffs, | : | (Senior District Judge Jerry Buchmeyer) |
| v. | : | **MOTION OF DEFENDANT THE** |
| THE PROCTER & GAMBLE COMPANY, et al., | : | **PROCTER & GAMBLE COMPANY TO DISMISS PLAINTIFFS' COMPLAINT, TRANSFER, OR** |
| Defendants. | : | **STAY** |

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6),

Defendant The Procter & Gamble Company ("Procter & Gamble") moves to dismiss Plaintiffs'

claim for tortious interference against Procter & Gamble in Plaintiffs' Original Petition

("Complaint"). Plaintiffs' Complaint arises out of a "Stock Purchase Agreement Dated as of

June 4, 2004 Among The Gillette Company, Zooth, Inc., and The Seller and Option Holder

Parties Hereto" ("Agreement"). Plaintiffs' and Procter & Gamble's wholly owned subsidiary,

The Gillette Company ("Gillette"), agreed to litigate "any Action between the parties arising in

whole or in part under or in connection with this Agreement" in "the state courts of the State of

Delaware or the United States District Court located in the State of Delaware. Agreement,

§ 12.12. Although Plaintiffs received in excess of $27 million for their shares, they now allege

---

[1] Susan Harrison, William G. Harrison III, individually and in his capacity as trustee for the Harrison Family Trust and The Emily Waldrip Trust, Cindy Nosser, Kathy Allen, Pat Allen, Tina Harrison, W.G. Harrison IV, Larry Luxenburg, and John Shelton ("Plaintiffs")

**Exhibit 2**

that the amount of deferred consideration is insufficient because Procter & Gamble has interfered with the marketing of Zooth products. Plaintiffs did not file an action against Gillette in Delaware, as required by the agreement; instead, Plaintiffs tried to circumvent their Agreement by suing Gillette's parent company, Procter & Gamble, in a Texas state court.[2] Procter & Gamble removed the case to this Court on July 25, 2006.

Plaintiffs' cause of action against Procter & Gamble must be dismissed for the following separate and independent reasons:

1. The dispute between Plaintiffs and Procter & Gamble is governed by an Agreement that contains an exclusive jurisdiction and mandatory venue provisions -- all disputes that "arise in whole or in part under or in connection with" the Agreement shall be resolved in Delaware. These provisions control venue, and deprive this Court of subject matter jurisdiction over this dispute. Therefore, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(3) and 28 U.S.C. § 1406(a), Plaintiffs' tortious interference cause of action against Procter & Gamble should be dismissed for lack of subject matter jurisdiction and improper venue.

2. Even if jurisdiction and venue were proper, Plaintiffs' tortious interference cause of action against Procter & Gamble fails to state a claim upon which relief may be granted. Procter & Gamble owns Gillette and they are "Affiliates" as defined by the Agreement. As a party to the Agreement,

---

[2] Plaintiffs also sued the 200 person lawfirm, Taft, Stettinius & Hollister LLP, and one of the partners in that firm that negotiated the 60 page Agreement

Procter & Gamble cannot, as a matter of law, interfere with the Agreement. Similarly, Plaintiffs' tortious interference cause of action against Procter & Gamble fails to state a claim for relief, because there is no allegation (because none could be made) that Gillette breached the Agreement with Plaintiffs. Moreover, Plaintiffs do not even allege an essential element of tortious interference -- that Procter & Gamble was motivated by some malicious or other bad faith purpose. Absent that, Plaintiffs' claim fails as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

3.  In the alternative, if this Court does not dismiss Plaintiffs' Complaint, then, pursuant to Fed. R. Civ. P. 21 and 42(b), this Court should sever the tortious interference cause of action alleged against Procter & Gamble from the negligence cause of action alleged against Defendants Taft, Stettinius & Hollister LLP and Mr. Grossmann and transfer Plaintiffs' claim against Procter & Gamble to the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 1404(b). Transfer is appropriate because the parties agreed that any action that "arise[s] in whole or in part under or in connection with th[e] Agreement," shall be brought "only in Delaware." At the very least, this Court should grant a stay of this matter, as to Procter & Gamble, pending the outcome of a

- 3 -

dispute between the parties already filed in the District Court in

Delaware.[3]

For each of these reasons, Plaintiffs' tortious interference cause of action against

Procter & Gamble fails and this Court should dismiss, or in the alternative, transfer or stay that

matter as to Procter & Gamble.

Respectfully submitted,

Stephen Briley (SB# 02993600)
BANNER, BRILEY & WHITE, L.L.P.
4245 Kemp Boulevard
Bank One Tower, Suite 200
Wichita Falls, TX 76308
Telephone:  (940) 692-5000
Telecopier:  (940) 692-8200
E-mail:  sbriley@wf.net

D. Jeffrey Ireland (Ohio Bar No. 0010443)
    *(Admitted Pro Hac Vice)*
Brian D. Wright (Ohio Bar No. 0075359)
    *(Admitted Pro Hac Vice)*
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH  45402
Telephone:  (937) 227-3710
Telecopier:  (937) 227-3717
E-mail:  djireland@ficlaw.com

Attorneys for Defendant
The Procter & Gamble Company

---

[3] To counter Plaintiffs' contravention of their agreement to litigate in Delaware, Procter & Gamble and Gillette filed an action, in accordance with the Stock Purchase Agreement, in the United States District Court for the District of Delaware on July 21, 2006, styled The Procter & Gamble Company v. Susan Harrison, Case No. 06-443.

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES .............................................................................. ii

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 1

II.   DUE TO THE JURISDICTION AND VENUE PROVISIONS IN THE
      AGREEMENT, THIS COURT LACKS SUBJECT MATTER JURISDICTION
      AND VENUE IS IMPROPER ....................................................................... 4

      A.   The Dispute Between Plaintiffs and Procter & Gamble is Based Upon a
           Written Agreement that Requires Dispute Resolution in Delaware ...................... 5

      B.   The Jurisdiction and Venue Provisions of the Stock Purchase Agreement
           are Valid and Enforceable Under Federal Law ................................................ 7

      C.   Procter & Gamble Can Enforce the Jurisdiction and Venue Provisions
           Even as a Nonsignatory ........................................................................... 8

      D.   Under the Doctrine of Equitable Estoppel, Plaintiffs Must Litigate Their
           Cause of Action Against Procter & Gamble in Delaware ............................. 10

III.  UNDER FED. R. CIV. P. 12(b)(6), PLAINTIFFS' TORTIOUS
      INTERFERENCE CAUSE OF ACTION MUST BE DISMISSED BECAUSE
      PLAINTIFFS FAILED TO ALLEGE A CLAIM UPON WHICH RELIEF MAY
      BE GRANTED ......................................................................................... 12

      A.   Plaintiffs' Claim of Tortious Interference Fails as a Matter of Law as
           Procter & Gamble Cannot Tortiously Interfere With the Agreement ............... 14

      B.   Plaintiffs' Claim Must Be Dismissed as Plaintiffs Failed In the Four
           Corners of the Complaint To State a Claim for Relief ................................. 17

           1.   Plaintiffs' Claim Fails to Allege that Procter & Gamble Acted
                Maliciously or With Any Bad Faith Purpose ..................................... 18

           2.   Plaintiffs' Claim Fails as it Does Not Allege that Gillette Breached
                the Agreement .......................................................................... 19

IV.   IN THE ALTERNATIVE, THIS MATTER SHOULD BE TRANSFERRED TO
      THE UNITED STATES DISTRICT COURT FOR DELAWARE, OR STAYED ......... 22

V.    CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

Page(s)

I. **FEDERAL CASES**

Affiliated Computer Servs., Inc. v. Caremark, Inc., 49 F. Supp. 2d 882 (N.D. Tex. 1999) ..................................................................................................................16, 18

Alternative Delivery Solutions v. R.R. Donnelley & Sons Co., No. SA-05-CA-0172, 2005 U.S. Dist. LEXIS 15949 (W.D. Tex. July 8, 2005) ......................8, 10

Armco, Inc. v. Moore Exploration, Inc., 603 F. Supp. 1 (S.D. Tex. 1984) ......................23

Ashlar Fin. Servs. Corp. v. Sterling Fin. Co., No. 3:00CV2814, 2002 U.S. Dist. LEXIS 2086 (N.D. Tex. Feb. 8, 2002).....................................................................18

Aventis Envtl. Sci. USA LP v. Scotts Co., 383 F. Supp. 2d 488 (S.D.N.Y. 2005) ...........21

Blackburn v. City of Marshall, 42 F.3d 925 (5th Cir. 1995) .....................................12

Brock v. Entre Computer Ctrs., Inc., 740 F. Supp. 428 (E.D. Tex. 1990)......................16

Campbell v. City of San Antonio, 43 F.3d 973 (5th Cir. 1995).............................12-13

Carney v. Resolution Trust Corp., 19 F.3d 950 (5th Cir. 1994) ................................12

Collins v. Morgan Stanley Dean Witter, 224 F.3d 496 (5th Cir. 2000).........................13

Commerce Nat'l Ins. Servs., Inc. v. Buchler, 120 Fed. Appx. 414 (3d Cir. 2004) ............19

In re ContiCommodity Servs. Secs. Litig. 733 F. Supp. 1555 (N.D. Ill. 1990)..................18

D.B. Inc. v. Nat'l Admin. Solutions Corp., No. 3-03-CV-2189-R, 2004 U.S. Dist. LEXIS 7172 (N.D. Tex. Apr. 21, 2004) ..............................................................7, 8, 9

Davis v. Bayless, Bayless & Stokes, 70 F.3d 367 (5th Cir. 1995) ..............................13

Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159 (3d Cir. 2001)........................21

Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278 (5th Cir. 1993)........................12

Frietsch v. Refco, Inc., 56 F.3d 825 (7th Cir. 1995).............................................9

Gill v. Del. Park, L.L.C., 294 F. Supp. 2d 638 (D. Del. 2003)..................................15

Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524 (5th Cir.), cert. denied, 531 U.S. 1013, 121 S. Ct. 570 (2000)........................................................10, 11

Guidry v. Bank of LaPlace, 954 F.2d 278 (5th Cir. 1992) ..................................... 13

Haynsworth v. Corporation, 121 F.3d 956 (5th Cir. 1997) .................... 4-5, 10

Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245 (5th Cir. 1997) ..................... 12

Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d
    1045 (5th Cir. 1982), cert. denied, 459 U.S. 1105, 103 S. Ct. 729 (1983) ................. 13

Lee & Lee Int'l, Inc. v. Lee, 261 F. Supp. 2d 665 (N.D. Tex. 2003) ..................... 19

Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898 (5th Cir.), cert. denied,
    __ U.S. __, 126 S. Ct. 365 (2005) ..................................................... 4

Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285 (11th Cir. 1998), cert.
    denied, 525 U.S. 1093, 119 S. Ct. 851 (1999) ....................................... 8-9

Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509 (9th Cir. 1988) ..................... 9

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S. Ct. 1907 (1972) ................. 7, 8

MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942 (11th Cir. 1999) ....................... 10

Permanence Corp. v. Kennametal, Inc., 908 F.2d 98 (6th Cir. 1990) ..................... 21

Peteet v. Dow Chem. Co., 868 F.2d 1428 (5th Cir. 1989) ................................ 23

Sheppard v. Texas Dep't of Transp., 158 F.R.D. 592 (E.D. Tex. 1994) ................... 13

Texas Source Group, Inc. v. CCH, Inc., 967 F. Supp. 234 (S.D. Tex. 1997) ............... 9

Toshiba Corp. v. Hynix Semiconductor, Inc., No. 3:04-CV-2391-L, 2005 U.S.
    Dist. LEXIS 22047 (N.D. Tex. Sept. 30, 2005) ..................................... 22

Vacuum Concrete Corp. v. Am. Mach. & Foundry Co., 321 F. Supp. 771
    (S.D.N.Y. 1971) .................................................................. 21

Vartec Telecom, Inc. v. BCE Inc., No. 3:02-CV-2585-M, 2003 U.S. Dist. LEXIS
    18072 (N.D. Tex. Oct. 9, 2003) ................................................... 10

Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429 (7th Cir. 1993) ............. 13

In re Volkswagen AG, 371 F.3d 201 (5th Cir. 2004) ..................................... 22

Zaylor v. Dep't of Agric. (In re Supreme Beef Processors, Inc.), 391 F.3d 629 (5th Cir. 2004) ................................................................................................. 4

II.    **STATE CASES**

Am. Med. Int'l, Inc. v. Giurintano, 821 S.W.2d 331 (14th Dist. 1991) ....................... 16-17

Aspen Advisors LLC v. United Artists Theatre Co., 843 A.2d 697 (Del. Ch. 2004), aff'd, 861 A.2d 1251 (Del. 2004) .............................................................. 19

Cantor Fitzgerald v. Chandler, No. 15689-NC, No. 15690-NC, 1999 Del. Ch. LEXIS 209 (Del. Ch. Oct. 14, 1999) ..................................................................... 16

Gilbert v. El Paso Co., 490 A.2d 1050 (Del. Ch. 1984), aff'd, 575 A.2d 1131 (1990) ........................................................................................................ 16

H.S.M. Acquisitions, Inc. v. West, 917 S.W.2d 872 (1996) ........................................ 16

Hi-Tek Consulting Servs., Inc. v. Bar-Nahum, 218 Ill. App. 3d 836, 578 N.E.2d 993 (Ill. App. 1991) ........................................................................................ 18

Holloway v. Skinner, 898 S.W.2d 793, 38 Tex. Sup. Ct. J. 582 (1994) ................. 16, 19

Nye v. Univ. of Del., 897 A.2d 768 (Del. 2006) ........................................................ 16

Shearin v. E.F. Hutton Group, Inc., 652 A.2d 578 (Del. Ch. 1994) ....................... 17, 18

Valores Corp., S.A. v. McLane Co., 945 S.W.2d 160 (Tex. App. 1997) ................... 16, 18

Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 34 Tex. Sup. Ct. J. 709 (Tex. 1991) ................................................................................................... 19

Wallace v. Wood, 752 A.2d 1175 (Del. Ch. 1999) ................................................ 16-17

III.    **STATUTES**

28 U.S.C. § 1404(a) ................................................................................. 4, 22, 23

28 U.S.C. § 1406(a) ..................................................................................... 3, 4

IV.    **RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................... 3, 4

Fed. R. Civ. P. 12(b)(3) ............................................................................... 3, 4

iv

Fed. R. Civ. P. 12(b)(6) .......................................................................................3, 4, 12, 13

Fed. R. Civ. P. 21 ........................................................................................................4, 22

Fed. R. Civ. P. 42(b) .................................................................................................4, 22

## V.   OTHER AUTHORITIES

3 Wright & Miller Federal Practice & Procedure: Civil 2D § 1216 ................................13

**MEMORANDUM IN SUPPORT OF THE MOTION OF
DEFENDANT THE PROCTER & GAMBLE COMPANY TO DISMISS
PLAINTIFFS' COMPLAINT, TRANSFER, OR STAY**

I.         INTRODUCTION AND SUMMARY OF ARGUMENT

This action was brought by Plaintiffs[4] as an attempt to avoid the forum they chose

under the terms of the Agreement.[5]  Although Plaintiffs agreed to litigate any "Action"[6]

concerning the Agreement in Delaware, they filed this lawsuit in Texas.

Plaintiffs are former shareholders of Zooth, Inc. ("Zooth"), a distributor of

children's toothbrushes and toothpaste.  Plaintiffs' Original Petition ("Complaint or Compl."),

¶¶ 2.1 and 5.1.  On June 4, 2004, Plaintiffs and The Gillette Company ("Gillette") entered into an

Agreement whereby Gillette agreed to purchase all of Plaintiffs' interest (including all issued and

outstanding shares of the common stock of Zooth) for $27,815,000 in up-front cash and separate

deferred consideration.  Id. ¶ 6.1; Agreement, § 2.2 (App. 00020-022).  The deferred

consideration is subject to a formula and will generate additional consideration set at a minimum

---

[4] Susan Harrison, William G. Harrison III, individually and in his capacity as trustee for the Harrison Family Trust and Emily Waldrip Trust, Cindy Nosser, Kathy Allen, Pat Allen, Tina Harrison, W.G. Harrison IV, Larry Luxenburg, and John Shelton ("Plaintiffs").

[5] Stock Purchase Agreement Dated as of June 4, 2004 Among The Gillette Company, Zooth, Inc., and The Seller and Option Holder Parties Hereto ("Agreement").  The Agreement has been submitted in the Joint Appendix to the Joint Motion Submission ("App."). The citations to the Agreement in the memorandum will be to both the page number of the Agreement and the page number of the Appendix.

[6] "Action" is defined broadly by the Agreement to include "any claim, action, cause of action or suit (whether in contract or tort or otherwise), litigation (whether at law or in equity, whether civil or criminal), controversy, assessment, arbitration, investigation, hearing, charge, complaint, demand, notice or proceeding to, from, by or before any Governmental Authority." Agreement, pp. 1-2 (definition of "Action") (App. 00009-010)

of $3 million and a maximum of $12 million. Agreement, § 2.2 (p. 8 ("Minimum Earnout Balance") and p. 13 (maximum payout provision)) (App. 00020-022).[7]

On October 1, 2005, Procter & Gamble merged with Gillette. Compl. ¶ 5.5. As a result of that merger, Procter & Gamble became an "Affiliate" of Gillette because it controls Gillette and Gillette, in turn, is a wholly-owned subsidiary and "Affiliate" of Procter & Gamble's.

In Section 12.12 of the Agreement, Plaintiffs agreed that all Actions (including Actions in contract and tort) would be brought in Delaware. More specifically, Plaintiffs agreed to "irrevocably submit[] to the exclusive jurisdiction of the state courts of the State of Delaware or the United States District Court located in the State of Delaware for the purpose of any Action between the parties arising in whole or in part under or in connection with this Agreement." Agreement, § 12.12.1 (emphasis added) (App. 00065-066). Plaintiffs also agreed that if an Action was brought in any court other than one of the courts listed above, then the Action "should be dismissed on grounds of *forum non conveniens*" and that Plaintiffs would "waive any claim[] and will not assert that venue should properly lie in any other location within the selected jurisdiction." Id.

On June 2, 2006, less than two years after receiving $27 million from Gillette, Plaintiffs determined that they were unhappy with the amount of deferred consideration they were receiving under the Agreement. Plaintiffs did not file an action against Gillette in a court in the State of Delaware as required by the Agreement; instead, Plaintiffs wrongfully filed this action in a state court in the State of Texas, alleging a tortious interference cause of action

---

[7] Plaintiffs allege only that Procter & Gamble has prevented Gillette from "fully performing" under the Agreement. Compl. ¶ 6.3. The allegation concedes that the Agreement is being performed, just not at the level of deferred compensation that Plaintiffs expected. This allegation is deficient as a matter of law.

against Procter & Gamble.  Compl. ¶¶ 6.1-6.4.[8]  Procter & Gamble removed the matter to this Court.  Notice of Removal, filed July 25, 2006.

Plaintiffs' tortious interference cause of action against Procter & Gamble fails for a number of reasons and must be dismissed.  The dispute between Plaintiffs and Procter & Gamble is an Action that is based upon and controlled by an interpretation of the Agreement.  As a result, the exclusive jurisdiction and mandatory venue provisions of the Agreement require this Action to be resolved in Delaware.  Thus, this Court lacks subject matter jurisdiction over this litigation and venue is improper in the United States District Court for the Northern District of Texas.  Therefore, this Court should dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(3) and 28 U.S.C. § 1406(a).

Even if jurisdiction and venue were proper in this Court (and they are not), Plaintiffs' tortious interference cause of action against Procter & Gamble must be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), as it fails to state a claim upon which relief may be granted. Under the terms of the Agreement and controlling law, as a defined Affiliate and permitted assign of the wholly-owned subsidiary Gillette, Procter & Gamble is a deemed party to the Agreement.  As a party to the Agreement, Procter & Gamble cannot -- as a matter of law -- interfere with the Agreement.

Similarly, Plaintiffs' tortious interference cause of action against Procter & Gamble fails to state a claim for which relief may be granted as Plaintiffs did not (and could not) plead the necessary elements for tortious interference with a contract.  Compl. ¶¶ 6.1-6.4.

---

[8] The filing of this Action is itself a breach of the Agreement.  Procter & Gamble and Gillette have sued Plaintiffs for breach of the Agreement in Delaware, the proper forum.  The Procter & Gamble Company v. Susan Harrison, Case No. 06-443, the United States District Court for the District of Delaware (filed July 21, 2006).

3

Plaintiffs failed to allege that Gillette, in any way, breached the Agreement or that Procter & Gamble, in any way, caused Gillette to breach the Agreement. Id. As a result, Plaintiffs' claim of tortious interference fails as a matter of law. Moreover, Plaintiffs' cause of action must be dismissed because they failed to plead that Procter & Gamble was motivated by some malicious or other bad faith purpose. Id. Absent any such allegation, Plaintiffs' claim is insufficient and fails to state a claim upon which relief may be granted.

In the alternative, even if this Court could overlook its lack of subject matter jurisdiction and improper venue and does not dismiss Plaintiffs' tortious interference cause of action, then this Court should sever Plaintiffs' cause of action against Procter & Gamble, pursuant to Fed. R. Civ. P. 21 and 42(b), from their negligence cause of action against Defendant Taft, Stettinus & Hollister LLP (the "Taft firm") and Thomas Grossmann, and Plaintiffs' claim against Procter & Gamble should be transferred to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a) or stayed pending the outcome of the Delaware action.

II.     DUE TO THE JURISDICTION AND VENUE PROVISIONS IN THE AGREEMENT, THIS COURT LACKS SUBJECT MATTER JURISDICTION AND VENUE IS IMPROPER

Whether this Court possesses subject matter jurisdiction and is the proper venue is a threshold issue. Zaylor v. Dep't. of Agric. (In re Supreme Beef Processors, Inc.), 391 F.3d 629, 633 (5th Cir. 2004). The enforcement of a forum selection clause and dismissal of a cause of action can be properly done through the use of Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(3) (improper venue), 12(b)(6) (failure to state a claim for relief) or 28 U.S.C. § 1406(a) (dismissal of cases filed in wrong venue). Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 902 (5th Cir.), cert. denied, __ U.S __, 126 S Ct. 365 (2005); Haynsworth v.

4

Corporation, 121 F.3d 956, 961 (5th Cir. 1997), (noting, but declining to address, "the . . . enigmatic question of whether motions to dismiss on the basis of forum selection clauses are properly brought as motions under" Rule 12(b)(1), 12(b)(3), or 12(b)(6), or 28 U.S.C. § 1406(a)), cert. denied, 523 U.S. 1072, 118 S. Ct. 1513 (1998) (citations omitted).

      A.     The Dispute Between Plaintiffs and Procter & Gamble is Based Upon a
              Written Agreement that Requires Dispute Resolution in Delaware

      Plaintiffs are all former shareholders of Zooth. Compl. ¶ 5.1. In early 2001, Plaintiffs contacted Gillette representatives to discuss the selling of their interest in Zooth. Id. ¶ 5.2. During the negotiations of the Agreement, Plaintiffs were advised and represented by lawyers from the Taft firm. Id. ¶¶ 5.3-5.4. After extensive negotiations, on June 4, 2004, the parties entered into a 60-page Agreement that detailed the entirety of the parties' agreement. Id. ¶ 5.4; Agreement, § 12.5 (App. 00064).

      In the Agreement, Plaintiffs agreed "irrevocably" that any Action would be subject to "exclusive jurisdiction" in the state courts of the State of Delaware or in the United States District Court for the District of Delaware. Section 12.12.1 of the Agreement states that:

> "[E]ach party to this Agreement, by its execution hereof,
> (a) hereby irrevocably submits to the exclusive jurisdiction of the
> state courts of the State of Delaware or the United States District
> Court located in the State of Delaware for the purpose of any
> Action between the parties arising in whole or in part under or in
> connection with this Agreement, (b) hereby waives to the extent
> not prohibited by applicable law, and agrees not to assert, by way
> of motion, as a defense or otherwise, in any such Action, any claim
> that it is not subject personally to the jurisdiction of the
> above-named courts, that its property is exempt or immune from
> attachment or execution, that any such Action brought in one of the
> above-named courts should be dismissed on grounds of *forum non
> conveniens*, should be transferred or removed to any court other
> than one of the above-named courts, or should be stayed by reason
> of the pendency of some other proceeding in any other court other

than one of the above-named courts, or that this Agreement or the subject matter hereof may not be enforced in or by such court and (c) hereby agrees not to commence any such Action other than before one of the above-named courts."

Id. § 12.12.1 (emphasis added) (App. 00065). Plaintiffs also agreed that:

"for any Action between the parties arising in whole or in part under or in connection with this Agreement, such party [will] bring Actions only in the State of Delaware. Each party further waives any claim and will not assert that venue should properly lie in any other location within the selected jurisdiction."

Id. § 12.12.2 (App. 00066).

After receiving the benefits of the Agreement, including more than $27 million for the business, Plaintiffs now complain about the deferred compensation that they are receiving under the terms of the Agreement. Compl. ¶¶ 6.2-6.3. More specifically, Plaintiffs allege that Gillette has failed to "act in all commercially reasonable ways to" perform under the terms of the Agreement. Id. Rather than pursuing this dispute with Gillette in the appropriate forum, Plaintiffs seek to circumvent the exclusive jurisdiction and mandatory venue provisions in the Agreement, and bring this suit against Procter & Gamble, Gillette's Affiliate and the parent of the wholly-owned subsidiary, for tortious interference. Id. ¶¶ 6.1-6.4.

Plaintiffs' tortious interference cause of action against Procter & Gamble must be dismissed. Delaware is the proper jurisdiction and venue for all Actions that "arise in whole or in part under or in connection with the Agreement." Agreement, § 12.12 (App. 00065-066). The Agreement applies to this cause of action because "Action" is defined to include:

"[A]ny claim, action, cause of action or suit (whether in contract or
tort or otherwise), litigation (whether at law or in equity, whether
civil or criminal), controversy, assessment, arbitration,
investigation, hearing, charge, complaint, demand, notice or
proceeding to, from, by or before any Governmental Authority."

Id. at pp. 1-2 (definition of "Action") (App. 00009-010). As a result, Plaintiffs' cause of action

cannot be brought here and properly lies in the courts in the State of Delaware.

    B.    The Jurisdiction and Venue Provisions of the Stock Purchase Agreement
        are Valid and Enforceable Under Federal Law

The exclusive jurisdiction and mandatory venue provisions of the Agreement

(§§ 12.12.1 and 12.12.2) are valid and enforceable under federal law. D.B. Inc. v. Nat'l Admin.

Solutions Corp., No. 3-03-CV-2189-R, 2004 U.S. Dist. LEXIS 7172, at *3 (N.D. Tex. Apr. 21,

2004) (Buchmeyer, J) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S. Ct.

1907 (1972) (forum selection clauses "are prima facie valid and should be enforced unless

enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"). "In

determining whether a forum selection clause is unreasonable or unjust, a court may consider

factors such as whether consent to the clause was secured by fraud, undue influence, or

overweening bargaining power, or whether the contractual forum is a serious inconvenience for

one or both parties." D.B. Inc., 2004 U.S. Dist. LEXIS 7172, at *3 (citing M/S Bremen, 407

U.S. at 12, 16).

The exclusive jurisdiction and mandatory venue provisions of the Agreement are

neither unreasonable nor unjust. During the negotiations and sale, Plaintiffs were represented

and advised by investment bankers from Brown, Gibbons, Lang & Company, L.P. and lawyers

from the Taft firm. After extensive negotiations, the parties entered into a 60-page Agreement

that detailed the entirety of the parties' agreement. Agreement, § 12.5 (App. 00064).

7

Plaintiffs received substantial compensation in exchange for their agreement to the terms of the Agreement. Plaintiffs received $27,815,000 in cash at the time of the closing of the sale of Plaintiffs' interest in Zooth. Compl. ¶ 5.4; Agreement, § 2.2 (App. 00020-022). In addition, Plaintiffs were provided certain deferred compensation under the terms of the Agreement. Id.

There is no allegation that the exclusive jurisdiction and mandatory venue provisions in the Agreement were the product of fraud, undue influence, or overweening bargaining power. Plaintiffs accepted the provisions as part of the bargained-for exchange, and litigating in Delaware is not "so gravely difficult and inconvenient" that Plaintiffs would "be deprived of [their] day in court." D.B. Inc., 2004 U.S. Dist. LEXIS 7172, at *4 (citing M/S Breman, 407 U.S. at 18). Accordingly, the jurisdiction and venue provisions are valid and enforceable under federal law.

C.   Procter & Gamble Can Enforce the Jurisdiction and Venue Provisions Even as a Nonsignatory

Even as a nonsignatory to the Agreement, Procter & Gamble can enforce the jurisdiction and venue provisions. Alternative Delivery Solutions v. R.R. Donnelley & Sons Co., No. SA-05-CA-0172, 2005 U.S. Dist. LEXIS 15949, at *48-49 (W.D. Tex. July 8, 2005). Nonsignatories to a contract containing jurisdiction and venue provisions (or forum selection clause) may enforce the provisions if the nonsignatory is "closely related" to a signatory or the alleged conduct is closely related to the contractual relationship. Id. at 48 (citing Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related to the dispute such that it becomes foreseeable' that it will be bound."), cert. denied, 525 U.S. 1093, 119 S. Ct. 851 (1999));

8

Frietsch v. Refco, Inc., 56 F.3d 825, 827 (7th Cir. 1995) ("Courts in this country . . . enforce

forum selection clauses in favor of nonparties 'closely related' to a signatory "); Manetti-Farrow,

Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988) (allowing nonsignatories to

enforce a forum selection clause when the "alleged conduct of the non-parties is so closely

related to the contractual relationship that the forum selection clause applies to all defendants").[9]

      Procter & Gamble is closely related to a signatory to the Agreement as it is an

Affiliate, as defined by the Agreement, and it is the parent of the wholly-owned subsidiary,

Gillette. Compl. ¶ 5.5. Moreover, the underlying allegations of Plaintiffs' tortious interference

cause of action against Procter & Gamble are closely related to the obligations of Gillette under

the terms of the Agreement. Id. ¶¶ 5.4, 5.5, 5.6, 6.2, and 6.3. Under the "closely related" test,

Procter & Gamble can enforce the jurisdiction and venue provisions in the Agreement.

      Although Procter & Gamble's passing the "closely related" test is sufficient for it

to benefit from the jurisdiction and venue provisions in the Agreement, Procter & Gamble is also

"deemed a party" under it. The Agreement provides that it is "binding upon and inure to the

benefit of the parties hereto and their respective successors and permitted assigns, [and] each of

which such successors and permitted assigns will be deemed to be a party hereto for all purposes

hereof." Agreement, § 12.2 (App. 00063). Successors and permitted assigns (i.e., Affiliates to

whom the Agreement could be assigned) are "deemed to be a party" to the Agreement "for all

purposes," which includes the jurisdiction and venue provisions of the Agreement. Id. § 12.12

(App. 00065-066) and p. 2 (definition of "Affiliate") (App. 00010). Procter & Gamble is a

---

[9] Federal courts in Texas have followed the same approach. Texas Source Group, Inc. v. CCH, Inc., 967 F. Supp. 234 (S.D. Tex. 1997); D.B., Inc., 2004 U.S. Dist. LEXIS 7172, at *3-4.

successor and permitted assign under the terms of the Agreement, and is deemed a party to the Agreement. Thus, Procter & Gamble, as a party to the Agreement, may enforce the jurisdiction and venue provisions of the Agreement.

> D.    Under the Doctrine of Equitable Estoppel, Plaintiffs Must Litigate Their
>       Cause of Action Against Procter & Gamble in Delaware

The jurisdiction and venue provisions in the Agreement should also be enforced under the doctrine of equitable estoppel. Vartec Telecom, Inc. v. BCE Inc., No. 3:02-CV-2585-M, 2003 U.S. Dist. LEXIS 18072, at *5-14 (N.D. Tex. Oct. 9, 2003); Alternative Delivery Solutions, 2005 U.S. Dist. LEXIS 15949, at *49-52. The courts in both Vartec Telecom and Alternative Delivery Solutions relied on the Fifth Circuit analysis of whether a nonsignatory to a contract may enforce an arbitration clause as outlined in Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524 (5th Cir.), cert. denied, 531 U.S. 1013, 121 S. Ct. 570 (2000).[10]

In Grigson, the Fifth Circuit held that, under the doctrine of equitable estoppel, a nonsignatory may compel arbitration in either of two situations: (1) when a signatory to a written agreement must rely on the terms of the written agreement in asserting its claims against the nonsignatory; or (2) when a signatory to the contract raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Grigson, 210 F.3d at 527 (adopting the test formulated by the Eleventh Circuit in MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)). The Fifth Circuit further held that "[t]he linchpin for equitable estoppel is equity -- fairness. For the case at hand, to not apply this intertwined-claims basis to compel arbitration would fly in the

---

[10] Both courts held that arbitration clauses are a subset of a forum selection clause and "there is very little difference between the two." Vartec Telecom, Inc., 2003 U.S. Dist. LEXIS 18072, at *7; Alternative Delivery Solutions, 2005 U.S. Dist. LEXIS 15949, at *50 (both quoting Haynswoth v. Corporation, 121 F.3d 956, 963 (5th Cir. 1997)).

face of fairness." Id. at 528.[11] It simply is not fair for Plaintiffs to seek benefits under the

Agreement and at the same time shirk their obligations.

Both prongs of the Grigson test are satisfied in this matter. Plaintiffs' tortious

interference cause of action is premised upon Gillette's performance under the deferred

consideration provision of the Agreement. Compl. ¶¶ 6.2, 6.3. Plaintiffs' claim against

Procter & Gamble could not exist but for the Agreement, and the cause of action arises out of

and relates directly to Gillette's performance under the terms of the Agreement. Id. In fact,

Plaintiffs seek damages for its cause of action by referring to Gillette's obligations under the

terms of the Agreement. Compl. ¶¶ 5.5, 5.6, 6.2, and 6.3. Therefore, Plaintiffs rely on the terms

of the Agreement in asserting their claim and, under the first prong of the Grigson test, Procter &

Gamble is entitled to enforce the jurisdiction and venue provisions of the Agreement.

While the Court is not compelled to consider the second prong of Grigson, as the

first prong is already satisfied, Plaintiffs' Complaint also meets the second prong of the test, as

Plaintiffs allege concerted conduct by Procter & Gamble and Gillette. Compl. ¶¶ 5.6, 6.3.[12]

Equity will not allow Plaintiffs to avoid the obligations of the jurisdiction and venue provisions

---

[11] Plaintiffs find themselves in almost the same situation as the plaintiffs in Grigson and, for the same reasons that the court in that case enforced the arbitration provision in that contract, this Court should enforce the jurisdiction and venue provisions in the Stock Purchase Agreement. In Grigson, plaintiffs claimed that defendants tortiously interfered with a movie distribution contract between plaintiffs and Columbia TriStar Home Video, Inc. ("TriStar") by pressuring TriStar to limit the release of the movie. Id. at 526. The Fifth Circuit held that plaintiffs relied on the terms of the distribution contract in asserting their claim for tortious interference. Id. at 530. As part of their claim, plaintiffs had to show that TriStar had breached the distribution contract by failing to exercise its good faith judgment in promoting, exploiting, and distributing the movie. Id. at 529-30. In addition, damages in the case would be computed by referring to the detailed accounting provisions of the distribution contract. Id. at 530. As in Grigson, Plaintiffs in this matter are relying on the terms of the Agreement to support their tortious interference cause of action against Procter & Gamble and would be required to show that Gillette breached the Agreement in failing to pay Plaintiffs deferred consideration under the terms of the Agreement. Compl. ¶¶ 6.2-6.3.

[12] As the Fifth Circuit recognized in Grigson, "equitable estoppel is much more readily applicable when the case presents both independent bases . . . for applying the intertwined-claims doctrine." Grigson, 210 F.3d at 527-28.

11

of the Agreement while simultaneously seeking to enjoy the benefits of the Agreement.

Equitable estoppel dictates that Procter & Gamble should be entitled to enforce the jurisdiction

and venue provisions of the Agreement.

III.    UNDER FED. R. CIV. P. 12(b)(6), PLAINTIFFS' TORTIOUS INTERFERENCE
        CAUSE OF ACTION MUST BE DISMISSED BECAUSE PLAINTIFFS
        FAILED TO ALLEGE A CLAIM UPON WHICH RELIEF MAY BE
        GRANTED

        Even if the Court determines that Plaintiffs may proceed against Procter &

Gamble in this forum, the Court should still dismiss the tortious interference cause of action

under Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate where, as here, the factual allegations

cannot be construed to support any claim for relief. Carney v. Resolution Trust Corp., 19 F.3d

950, 954 (5th Cir. 1994). Although the Court must accept as true well-pleaded factual

allegations in the Complaint, the Court need not accept as true conclusory allegations or

allegations of inferences that are contradicted by the facts pleaded or set out in the exhibits

attached to or incorporated in the pleadings. Blackburn v. City of Marshall, 42 F.3d 925, 931

(5th Cir. 1995) ("'conclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss'") (quoting Fernandez-Montes v.

Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993)).

        A plaintiff must assert more than general legal conclusions to avoid dismissal.

Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1250 (5th Cir. 1997). "[T]he complaint must

contain either direct allegations on every material point necessary to sustain a recovery . . . or

contain allegations from which an inference fairly may be drawn that evidence on these material

points will be introduced at trial." Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir.

1995) (quoting 3 Wright & Miller Federal Practice & Procedure: Civil 2D § 1216 at 156-159).

Where a complaint asserts merely conclusory allegations, these conclusory allegations and unwarranted deductions of fact are not admitted as true. Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992). In addition, where a complaint shows on its face that it is barred by an affirmative defense, the Court may dismiss the action for failing to state a claim. Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982), cert. denied, 459 U.S. 1105, 103 S. Ct. 729 (1983).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court may review the pleadings on file, Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000), and matters of public record. Davis v. Bayless, Bayless & Stokes, 70 F.3d 367, 372 n.3 (5th Cir. 1995). "Pleadings on file" include "documents that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [its] claim." Collins, 224 F.3d at 498-99. In this case, Plaintiffs refer to the Agreement, which is the basis of Plaintiffs' cause of action for tortious interference, in the Complaint without a challenge to its authenticity, and the Court can consider it even though it is not physically attached to Plaintiffs' Complaint. Id.[13]

---

[13] Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) ("[a] plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); Sheppard v. Texas Dep't of Transp., 158 F.R.D. 592, 597 (E.D. Tex. 1994) ("[A] court may rely upon a defendant's exhibit when it is referred to in the plaintiff's complaint and is central to plaintiff's claim.").

A.    Plaintiffs' Claim of Tortious Interference Fails as a Matter of Law as
Procter & Gamble Cannot Tortiously Interfere With the Agreement

Under the terms of the Agreement, Gillette purchased Plaintiffs' interest (all of the issued and outstanding shares of common stock of Zooth) for $27,815,000 in cash at the time of closing. Compl. ¶ 5.4; Agreement, § 2.2.1 (App. 00020). In addition, Gillette agreed to pay deferred consideration to Plaintiffs for a three-year period equal to "4% per annum of Net Sales of Zooth Branded Products" and "4% per annum of Net Sales of Design Portfolio Products." Agreement, § 2.2.1(b) (App. 00022-022). The deferred consideration provision of the Agreement provided for both a minimum and maximum payout, recognizing that future events might affect the ultimate payout to Plaintiffs. Id.

In fact, the Agreement contemplates that Gillette might some day consolidate or merge into another company. The term "Acquisition Transaction" is defined to include "any transaction whereby [Gillette] (a) consolidate[s] or merge[s] with or into any Person (other than an individual)." Id. at p. 1 (App. 00009). The definitions for both "Zooth Branded Products" and "Design Portfolio Products" state that the meanings of the terms "do[] not include products or product lines that are acquired by, or made available to, [Gillette] in connection with an Acquisition Transaction that closes after the Closing Date." Id. at pp. 4 and 11 (App. 00012, 00019). Thus, the Agreement recognized explicitly that Gillette could merge into another company, and that sales of the products of Gillette's merger partner would not generate deferred compensation for Plaintiffs.

On October 1, 2005, Procter & Gamble merged with Gillette. Compl. ¶ 5.5. As a result of the merger, Gillette and Procter & Gamble became Affiliates of one another and Gillette became a wholly-owned subsidiary of Procter & Gamble. Id. Under the terms of the

14

Agreement, Gillette is permitted to "(a) assign any or all of its rights and interests hereunder to one or more of its Affiliates, and (b) designate one or more of its Affiliates to perform its obligations hereunder, in each case, so long as [Gillette] is not relieved of any Liability hereunder." Agreement, § 12.2 (App. 00063). As an Affiliate and parent of Gillette, a wholly-owned subsidiary, Procter & Gamble is both a "permitted assign" under the Agreement and entitled to perform the Agreement. In addition, once Procter & Gamble merged with Gillette, it became a successor of Gillette. A "successor" or "permitted assign" (i.e., one to whom the contract could be assigned) is "deemed to be a party" to the Agreement and the Agreement is "binding upon and inure to [its] benefit." Id. Nonetheless, ignoring Procter & Gamble's relationship as a party to the Agreement, Plaintiffs brought a claim alleging "tortious interference with contract and existing business relationship" against Procter & Gamble. Compl. ¶¶ 6.1-6.4.[14]

Plaintiffs' tortious interference cause of action against Procter & Gamble is governed by and must be construed in accordance with Delaware law. Plaintiff agreed unambiguously that:

> "[the] Agreement, the rights of the parties and <u>all Actions</u> arising, in whole or in part under or in connection herewith, <u>will be governed by and construed in accordance with the domestic substantive laws of The State of Delaware</u>, without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction."

---

[14] A claim for tortious interference with a contract and tortious interference with a prospective business relationship are similar and only one cause of action is alleged against Procter & Gamble. <u>Gill v. Del. Park, L.L.C.</u>, 294 F. Supp. 2d 638, 645 (D. Del. 2003) ("The torts of interference with an existing contract and interference with advantageous business relations are closely related . . .").

15

Agreement, § 12.11 (emphasis added) (App. 00065).[15] The Agreement's governing law provision

applies to all claims that arise "in whole or in part under or in connection" with the Agreement,

as the parties defined the term "Action" to include "any claim, action, cause of action or suit

(whether in contract or tort or otherwise), litigation (whether at law or in equity, whether civil or

criminal), controversy, assessment, arbitration, investigation, hearing, charge, complaint,

demand, notice or proceeding to, from, by or before any Governmental Authority." Id. at pp. 1-2

(emphasis added) (App. 00009-010). The Agreement, and disputes about it, are incontrovertibly

governed by Delaware law.

       Under Delaware law, "as a matter of law, a party cannot tortiously interfere with a

contract to which it is also a party." Nye v. Univ. of Del., 897 A.2d 768, 768 (Del. 2006) (citing

Gilbert v. El Paso Co., 490 A.2d 1050, 1058 (Del. Ch. 1984), aff'd, 575 A.2d 1131 (1990)).[16]

"Beginning with that premise, courts have reasoned that just as an entity cannot be liable for

interfering with the performance of its own contract, a parent cannot be liable for interfering with

the performance of a wholly owned subsidiary." Wallace v. Wood, 752 A.2d 1175, 1183 (Del.

Ch. 1999) (citing Am. Med. Int'l, Inc. v. Giurintano, 821 S.W.2d 331 (14th Dist. 1991) (holding

---

[15] Choice of law provisions (i.e., forum selection clauses), like the one in the Stock Purchase Agreement, apply to both contract and tort claims and are routinely enforced under both Texas and Delaware law. Brock v. Entre Computer Ctrs., Inc., 740 F. Supp. 428, 430 (E.D. Tex. 1990) (rejecting plaintiffs' assertion that the forum selection clause "does not cover plaintiffs' tort claims"); Cantor Fitzgerald v. Chandler, No. 15689-NC, No. 15690-NC, 1999 Del. Ch. LEXIS 209, at *4, 14 (Del. Ch. Oct. 14, 1999) (exercising personal jurisdiction over defendants for a tort claim based on a forum selection clause).

[16] Even under Texas law, "a party [to a contract] cannot tortiously interfere with its own contract." Holloway v. Skinner, 898 S.W.2d 793, 796, 38 Tex. Sup. Ct. J. 582 (1994). While Texas courts are divided on the issue of whether a parent of a wholly-owned subsidiary is theoretically capable of tortiously interfering with the contractual relations of its wholly-owned subsidiary, Texas courts routinely dismiss such claims. See Affiliated Computer Serv., Inc. v. Caremark, Inc., 49 F. Supp. 2d 882, 884 (N.D. Tex. 1999) (citing H.S.M. Acquisitions, Inc. v. West, 917 S.W.2d 872, 882-83 (1996); Am. Med. Int'l v. Giurintano, 821 S.W.2d 331, 336-37 (14th Dist. 1991) (two intermediate appellate courts that held it was legally impossible for a parent to tortiously interfere with the contracts of a wholly-owned subsidiary); and Valores Corp., S.A. v. McLane Co., 945 S.W.2d 160, 168 (Tex. App. 1997) (concluding that there was a possibility under Texas state law that a parent corporation could tortiously interfere with a subsidiary's contract).

16

that antitrust immunity of parent for conspiring to restrain trade with subsidiary is applicable to claim for inference with contract)).[17]

When Procter & Gamble merged with Gillette, Gillette and Procter & Gamble became Affiliates of one another and Gillette became a wholly-owned subsidiary of Procter & Gamble. As an Affiliate and parent of the wholly-owned subsidiary of Gillette, Procter & Gamble cannot, as a matter of law, tortiously interfere with the Agreement. Shearin v. E.F. Hutton Group, Inc., 652 A.2d 578, 590 (Del. Ch. 1994) ("Under this theory, 'interference' by a parent in the performance of contractual obligations of its wholly owned subsidiary, no matter how aggressive, is not actionable.").

     B.    Plaintiffs' Claim Must Be Dismissed as Plaintiffs Failed In the Four Corners of the Complaint To State a Claim for Relief

Even if Plaintiffs' claim did not fail as a matter of law, Plaintiffs' tortious interference cause of action against Procter & Gamble must be dismissed for two separate and independent reasons. First, Plaintiffs' tortious interference cause of action against Procter & Gamble fails to allege any facts to show (because there are none) that Procter & Gamble acted in any way that was motivated by some malicious or other bad faith purpose. Second, Plaintiffs fail to allege (because they cannot) that Gillette breached the terms of the Agreement, which is a necessary element for Plaintiffs' tortious interference cause of action under Delaware law.

---

[17] The court further stated that "[i]t is not unfair to regard a parent and its wholly owned subsidiary as a single economic unit . . . Such entities share the commonality of economic interests which underlay the creation of an interference privilege." Id. (citations omitted).

1.    Plaintiffs' Claim Fails to Allege that Procter & Gamble Acted
      Maliciously or With Any Bad Faith Purpose

Even where some courts have held that it is theoretically possible for a parent of a

wholly-owned subsidiary to tortiously interfere with the subsidiary's contract, the courts have

uniformly held that any such interference is subject to a qualified privilege. Shearin, 652 A.2d

at 590.[18] The privilege arises as long as "the parent pursues lawful action in the good faith

pursuit of its profit making activities." Id. Under this theory, "the burden should fall on the

plaintiff to plead and prove that the privilege among affiliates to discuss and recommend action

is not applicable or, stated affirmatively, to allege facts that would make the 'interference'

improper." Id. at 591 (citing Hi-Tek Consulting Servs., Inc. v. Bar-Nahum, 218 Ill. App. 3d 836,

578 N.E.2d 993 (Ill. App. 1991)). Stated another way, "there can be no non-contractual liability

to the affiliated Corporation, which is privileged to consult and counsel with its Affiliates, unless

the plaintiff pleads and proves that the Affiliates sought not to achieve permissible financial

goals but sought maliciously or in bad faith to injure plaintiff." Id. (dismissing plaintiffs' claim

of tortious interference).

Plaintiffs offer only the conclusory and legally insufficient allegation that "P&G

unlawfully and without justification undertook to interfere with and otherwise prevent Gillette

and/or Zooth from fully performing under the Contract and thereby damaging Plaintiffs. Among

other things, P&G interfered with the marketing of Zooth products, Gillette's efforts to expand

and continue to develop Zooth's products and markets, its stability in the marketplace and its

---

[18] Ashlar Fin. Servs. Corp. v. Sterling Fin. Co., No. 3:00CV2814, 2002 U.S. Dist. LEXIS 2086, at *23 (N.D. Tex. Feb 8, 2002); In re ContiCommodity Servs. Secs. Litig., 733 F. Supp. 1555, 1568 (N.D. Ill. 1990) (applying Texas law); Affiliated Computer Servs. Inc. v. Caremark, Inc., 49 F. Supp. 2d 882, 884 (N.D. Tex. 1999); Valores Corp., S.A. de C.V. v. McLane Co., 945 S.W.2d 160, 167 (Tex. App. 1997) (writ denied) (holding that "[t]he federal courts interpreting Texas law . . . have treated the issue as one of privilege, not capacity, but they have disagreed as to the extent of the privilege.").

employment of key employees." Compl. ¶ 6.3. Even assuming for purposes of this motion that

the above conclusory statement is true (which it is not), Plaintiffs have failed to allege sufficient

facts to show (because there are none) that Procter & Gamble acted in any way that was

motivated by some malicious or other bad faith purpose. On the contrary, Plaintiffs falsely

assume and assert that Procter & Gamble's pursuit of its "permissible financial goals" must be

"justified" by efforts to maximize the acquisition price to Plaintiffs, and that payment of the

agreed minimum deferred consideration to Plaintiffs is not "full performance" of the Agreement.

Thus, Plaintiffs' tortious interference cause of action against Procter & Gamble must be

dismissed.

> 2.    Plaintiffs' Claim Fails as it Does Not Allege that Gillette Breached
>        the Agreement

Under Delaware law, "'if there is no sustainable claim of breach, there can be no

viable claim for tortious interference' with existing business relations because the cause of action

requires proof that the defendant intentionally took an action which caused the existing client to

breach its existing contract with the plaintiff." Commerce Nat'l Ins. Servs., Inc. v. Buchler, 120

Fed. Appx. 414, 418 (3d Cir. 2004) (quoting Aspen Advisors LLC v. United Artists Theatre Co.,

843 A.2d 697, 713 (Del. Ch. 2004), aff'd, 861 A.2d 1251 (Del. 2004).[19]  Plaintiffs fail to allege

---

[19] Similarly, under Texas law, to recover under a theory of tortious interference, Plaintiffs must show that (1) a
contract existed between the plaintiffs and a third party that was the subject of interference; (2) the defendant's act of
interference was willful and intentional; (3) the intentional act of the defendant was a proximate cause of damage to
the plaintiff; and (4) actual damage and loss to the plaintiff resulted. Victoria Bank & Trust Co. v. Brady, 811
S.W.2d 931, 939, 34 Tex. Sup. Ct. J. 709 (Tex. 1991). As Judge Linsay of this Court recently stated, "'a party to a
contract has a cause of action for tortious interference against any third person (a stranger to the contract) who
wrongly induces another contracting party to breach the contract.'" Lee & Lee Int'l, Inc. v. Lee, 261 F. Supp. 2d
665, 678 (N.D. Tex. 2003) (citing Holloway v. Skinner, 898 S.W.2d 793, 794-795, 38 Tex. Sup. Ct. J. 582 (Tex.
1994)) (emphasis in original). When plaintiffs failed to allege that there was a breach of the agreement or that the
defendant in any way caused another to breach the agreement, a claim of tortious interference "fails as a matter of
law." Id. at 679.

that Gillette breached the Agreement in any way and, as a result, their claim fails to state a claim upon which relief may be granted and must be dismissed.

Plaintiffs' failure is understandable, however, as neither Gillette nor Procter & Gamble has breached the Agreement. Plaintiffs offer meager and insufficient allegations that:

> "the Contract provided that the Plaintiffs would receive additional, significant sums which were predicated on the continuing and future performance of Gillette with regard to marketing and selling Zooth products and design portfolio products as defined in the Contract. Gillette was contractually obligated to act in all commercially reasonable ways to facilitate and achieve these performance based incentives."

Compl. ¶ 6.2. Plaintiffs' allegation above is insufficient to allege a breach of the Agreement because, contrary to Plaintiffs' conclusory assertion above, Gillette (and Procter & Gamble) are not contractually or legally obligated to "act in all commercial reasonable ways" to achieve deferred compensation consideration for Plaintiffs.

Here, Plaintiffs resort to adding obligations to the Agreement that do not exist. In effect, Plaintiffs argue that the deferred consideration provisions of the Agreement create an obligation on the part of Gillette to run the Zooth business primarily (if not solely) for the benefit of the former owners, rather than the current owners, of Zooth. No such obligation, however, is expressed in the Agreement, nor is any such provision implied by the deferred consideration provisions, as the parties freely negotiated a minimum payment that by definition sets a standard for acceptable performance. Plaintiffs' case rests on the manifestly invalid premise that meeting the defined minimum of a standard is not meeting the standard. They argue, in effect, that "minimum" does not mean "minimum." Beyond the logical impossibility, any such

20

interpretation by Plaintiff strains practical credibility, as no prudent businessperson would have accepted any such obligation as a term under the Agreement.

      Instead, the Agreement had both minimum and maximum earnout provisions. Agreement, § 2.2 (agreement provides a "Minimum Earnout Balance" of $3 million (p.8) and a maximum deferred consideration of $12 million (p. 13) (App. 00020-022)).[20] Since the Agreement provided for a <u>minimum</u> payment, Gillette and Procter & Gamble were and are under no obligation to act in "commercially reasonable ways" to <u>maximize</u> the Plaintiffs' welfare. <u>Aventis Envtl. Sci. USA LP v. Scotts Co.</u>, 383 F. Supp. 2d 488, 504-505 (S.D.N.Y. 2005) (interpreting best efforts clauses under Delaware law) ("[N]o such [best efforts] clause is implied if, like here, provisions in the contract guarantee payments."); <u>Emerson Radio Corp. v. Orion Sales, Inc.</u>, 253 F.3d 159 (3d Cir. 2001);[21] <u>Permanence Corp. v. Kennametal, Inc.</u>, 908 F.2d 98, 101-02 (6th Cir. 1990) (no "best efforts" obligation to exploit patents implied when $150,000 was paid for the exercise of the option for grant of exclusive agency and $100,000 was paid in advance royalties); <u>Vacuum Concrete Corp. v. Am. Mach. & Foundry Co.</u>, 321 F. Supp. 771, 773-774 (S.D.N.Y. 1971) (holding that there was no implied "best efforts" clause in an exclusive dealing contract when there was a guaranteed royalty payment and right to terminate).

---

[20] Plaintiffs' Complaint does not allege (because it cannot) that Plaintiffs have failed to receive <u>any</u> deferred consideration. Compl. ¶¶ 5.1 - 6.7. Rather, the unspoken essence of the Complaint is that Plaintiffs have not received enough deferred considerations.

[21] The Stock Purchase Agreement and the relationship between Plaintiffs and Gillette is similar to the exclusive trademark relationship between Emerson and Orion. In <u>Emerson</u>, Emerson and Orion entered into an exclusive trademark licensing contract with a term of three years. <u>Id.</u> at 161. Emerson sued Orion claiming that in light of the exclusive nature of the contract Orion had an implied obligation to use "reasonable efforts" to sell and market the Emerson products, which the District Court rejected. <u>Id.</u> at 163. Agreeing with the District Court, the Court of Appeals held that because Orion was required to make a minimum $4 million annual royalty payment, there was no implied obligation to use "best efforts." <u>Id.</u> at 166. Since the minimum royalty payment protected Emerson from the possibility that Orion would not use its best efforts to sell or market the Emerson products, there was no reason to imply a "best efforts" obligation. <u>Id.</u> at 169.

Since there is a minimum payout under the terms of the Agreement, there is no implied duty on the part of Gillette (or Procter & Gamble) to perform in "commercially reasonable ways" and the payment protects Plaintiffs from any possibility that Gillette would not use "commercial[ly] reasonable" efforts to sell or market the Zooth product. Thus, Plaintiffs' allegation is unsupportable as a matter of law and insufficient to allege a cause of action against Procter & Gamble for tortious interference. As a result, Plaintiffs' cause of action against Procter & Gamble must be dismissed.

IV.    ,  IN THE ALTERNATIVE, THIS MATTER SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR DELAWARE, OR STAYED

In the alternative, if this Court does not dismiss Plaintiffs' tortious interference cause of action against Procter & Gamble, then pursuant to Fed. R. Civ. P. 21 and 42(b), the claim should be severed from Plaintiffs' negligence clause of action against the Taft firm and Mr. Grossmann, and should be transferred to the United Stated District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a), which provides for transfer of an action "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a).

To meet the requirements for transfer under 28 U.S.C. § 1404(a), "a district court is to first determine, 'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.'" Toshiba Corp. v. Hynix Semiconductor, Inc., No. 3:04-CV-2391-L, 2005 U.S. Dist. LEXIS 22047, at *7 (N.D. Tex. Sept. 30, 2005) (quoting In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004)). Transfer of venue pursuant to 28 U.S.C. § 1404(a) is at the discretion of the Court, considering: "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the

22

interest of justice be better served by transfer to a difference forum." Id. at *8 (quoting Peteet v.

Dow Chem. Co., 868 F.2d 1428, 1436 (5th Cir. 1989)) (internal quotation marks omitted).

Plaintiffs' tortious interference claim against Procter & Gamble could have been

brought only in the United States District Court for the District of Delaware. Since the

Agreement contained exclusive jurisdiction and mandatory venue provisions, venue is proper in

the United States District Court for the District of Delaware.

Moreover, the Agreement evidences the parties' preference for the courts in the

State of Delaware as the forum to resolve their disputes. Agreement, § 12.12.1 (App.

00065-066). The parties recognize that Delaware is the appropriate forum to resolve such

dispute as they agreed that "any such Action brought in one of the above-named courts should be

dismissed on grounds of forum non conveniens." Id. The Delaware courts are the appropriate

forum, and the Court should transfer this Action to The United States District Court for the

District of Delaware "[f]or the convenience of parties and witnesses, [and] in the interest of

justice." 28 U.S.C. § 1404(a).

Finally, at the very least, this action should be stayed pending the outcome of the

Delaware action, for the same reasons articulated above. A court has the power to stay an action

pending the outcome of a related proceeding, e.g., Armco, Inc. v. Moore Exploration, Inc.,

603 F. Supp. 1, 2 (S.D. Tex. 1984). If this case is not dismissed or transferred and it proceeds

without a stay, then the parties will be forced to expend resources litigating two simultaneous

cases and risk inconsistent judgments, which is contrary to efficient use of judicial resources.

23

V.     CONCLUSION

Based on the reasons stated above, Plaintiffs' tortious interference cause of action against Procter & Gamble fails, and this Court should dismiss, or in the alternative, transfer or stay that matter as to Procter & Gamble.

Respectfully submitted,

Stephen Briley (SB #02993600)
BANNER, BRILEY & WHITE, L.L.P.
4245 Kemp Boulevard
Bank One Tower, Suite 200
Wichita Falls, TX 76308
Telephone:     (940) 692-5000
Telecopier:     (940) 692-8200
E-mail:  sbriley@wf.net

D. Jeffrey Ireland (Ohio Bar No. 0010443)
        *(Admitted Pro Hac Vice)*
Brian D. Wright (Ohio Bar No. 0075359)
        *(Admitted Pro Hac Vice)*
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Telephone:  (937) 227-3710
Telecopier:  (937) 227-3717
E-mail:  djireland@ficlaw.com

Attorneys for Defendant
The Procter & Gamble Company

24

**CERTIFICATE OF SERVICE**

I certify that on August 16, 2006, I served via Federal Express the Motion of

Defendant The Procter & Gamble Company to Dismiss Plaintiffs' Complaint, Transfer, or Stay

to the following counsel of record:

        Robert L. Chaiken
        Kenneth B. Chaiken
        Greg S. Gober
        CHAIKEN & CHAIKEN, P.C.
        One Galleria Tower
        13355 Noel Road, Suite 600
        Dallas, Texas  75240

        Attorneys for Plaintiffs

        George M. Kryder
        VINSON & ELKINS LLP
        Trammell Crow Center
        2001 Ross Avenue, Suite 3700
        Dallas, TX  75201-2975

        Attorneys for Defendant
        Taft, Stettinius & Hollister LLP

D. Jeffrey Ireland

1705551 2

25

EXHIBIT 3



CHAIKEN & CHAIKEN, P.C.
ONE GALLERIA TOWER
13355 NOEL ROAD STE. 600
DALLAS, TEXAS 75240
P 214-265-0250
F 214-265-1537
WWW.CHAIKENLAW.COM

*FOR SETTLEMENT PURPOSES ONLY*

July 24, 2006

D. Jeffrey Ireland                    *Via Facsimile: 937/227-3717 and Regular Mail*
Faruki, Ireland & Cox, P.L.L.
500 Courthouse Plaza, S.W.
109 North Ludlow Street
Dayton, OH 45402

> Re:    *Susan Harrison et al. v The Proctor & Gamble Company, et al.*,
>         Cause No. 164,474-C; In the 87th Judicial District Court, Wichita County, Texas

Dear Jeffrey:

**REDACTED**

For some reason, your clients also seem to think that our clients fear litigating in Delaware.

**Exhibit 3**

D. Jeffrey Ireland
July 24, 2006
Page 2

Let me make it absolutely clear to you that if settlement is not imminent, our clients have no concern whatsoever about litigating with Gillette in Delaware. We'd have sued Gillette there eventually and did not yet do so for logistical reasons that are not relevant in, but which in part were designed to facilitate, our settlement discussions.

If this matter does not settle, we will look forward to securing the dismissal of P&G's wrongfully filed claims in the second filed Delaware suit, and to proceeding on a two front fight, as we are quite confident that we will prevail in keeping our claims against P&G in Texas, where they are properly filed.

**REDACTED**

Very truly yours,

Kenneth B. Chaiken

cc:     Clients
        Robert L. Chaiken (of the firm)

EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUSAN HARRISON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No: 7:06-cv-121-R |
| | § | |
| | § | |
| THE PROCTER & GAMBLE CO., et al. | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT THE PROCTER AND GAMBLE COMPANY'S <u>MOTION TO DISMISS, TRANSFER, OR STAY</u>

Robert L. Chaiken
State Bar No. 04057830
Kenneth B. Chaiken
State Bar No. 04057800
Greg S. Gober
State Bar No. 00785916

**CHAIKEN & CHAIKEN, P.C.**
One Galleria Tower
13355 Noel Road, Suite 600
Dallas, Texas 75240
Telephone: (214)265-0250
Telecopy: (214)265-1537

**ATTORNEYS FOR PLAINTIFFS**

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page i*

Exhibit 4

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iv-vi

I. FACTUAL AND PROCEDURAL BACKGROUND ............................................... 1

II. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 5

    A. The Agreement upon which P&G's Motion is based does not require dismissal, stay or transfer of this action and, in fact, the terms of the Agreement require that P&G's Motion be denied and that this suit be maintained in this forum ........................ 5

    B. The Court Should Not Dismiss Plaintiff's Claim For Tortious Interference For Failure To State A Claim Upon Which Relief May be Granted ............................ 6

III. JURISDICTION AND VENUE ARE PROPER IN THIS COURT PURSUANT TO THE EXPRESS TERMS OF THE AGREEMENT ......................................................... 7

    A. Rules of Contract Construction Under Delaware law ......................................... 7

    B. Agreement Does Not Require That Plaintiffs File This Suit In Delaware ............. 7

    C. P&G Cannot Enforce The Jurisdiction And Venue Provisions Despite Its Status As A Nonsignatory Because Doing So Would Conflict With The Express Terms Of The Agreement ...................................................................................... 11

    D. Plaintiffs Are Not Equitably Estopped From Insisting On The Application Of The Agreement As It Was Written And Agreed Upon By The Parties ....................... 14

    E. A Transfer Pursuant To 28 U.S.C. § 1404(a) Is Not Appropriate Under The Circumstances ................................................................................................ 16

III. PLAINTIFFS' CLAIM FOR TORTIOUS INTERFERENCE MUST NOT BE DISMISSED 17

    A. Standard For a Motion to Dismiss ..................................................................... 17

    B. Texas Law Governs Plaintiffs' Tortious Interference Claim ............................... 18

    C. Plaintiffs May Assert A Claim For Tortious Interference Against P&G For Interfering With The Contract Between Plaintiffs And Gillette Even Absent A Breach if the Interference Made the Performance More Difficult and Caused Damages to Plaintiffs ........................................................................................ 20

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page ii*

D.   P&G's Acts of Interference Prior To The Merger Between P&G And Gillette
     Form the Basis, In Part, for Plaintiffs' Claims ................................................21

E.   Plaintiffs' claim for Tortious interference is not barred as a matter of law by the
     Parent/Subsidiary Relationship between P&G and Gillette ..............................22

CONCLUSION ...........................................................................................................25

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page iii*

## TABLE OF AUTHORITIES

*Affiliated Computer Svcs. v. Caremark, Inc.,*
    49 F.Supp.2d 882 (N.D. Tex. 1999) .................................................... 24

*Alternative Delivery Solutions v. R.R. Donnelley & Sons Co.,*
    2005 WL 1862631 (W.D. Tex. July 8, 2005) ..................................... 15

*Ashlar Financial Svcs. Corp. v. Sterling Fin. Co., Inc.,*
    2002 WL 206439, *8 (N.D. Tex. Feb 8, 2002) (denying motion to dismiss) ..... 24,25

*Baker v. LeBoef, Lamb, Leiby, & Macrae,*
    105 F.3d 1102 (6th Cir. 1997) .................................................... 12

*Baker v. Putnal,*
    75 F.3d 190, 196 (5th Cir. 1996) .................................................... 13,17

*Berclain America Latina, S.A. v. Baan Co., N.V.,*
    87 Cal.Rptr.2d 745, 750 (Cal. App. 1999).................................... 12,13,14

*Bilmar Drilling, Inc. v. IFG Leasing Co.,*
    795 F.2d 1194 (5th Cir. 1986) .................................................... 16

*Blackburn v. City of Marshall,*
    42 F.3d 925, 931 (5th Cir. 1995) .................................................... 17

*Coates v. Heartland Wireless Communications, Inc.,*
    26 F.Supp.2d 910, 913-14 (N.D. Tex. 1998).................................... 17

*Conley v. Gibson,*
    355 U.S. 41-45-46 (1957) .................................................... 17

*D.B., Inc. v. Nat'l Admin. Solutions Corp.,*
    2004 WL 865842, *3 (N.D.Tex. April 21, 2004) ..................................... 12,13

*Exxon Corp. v. Miesch,*
    180 S.W.3d 299 (Tex. App.-Corpus Christi 2005) ..................................... 21

*Friendswood Dev. Co. v. McDade & Co.,*
    926 S.W.2d 280, 282 (Tex. 1996) .................................................... 21

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page iv*

*Gutierrez v. Collins,*
    583 S.W.2d 312 (Tex.1979)................................................................ 19

*Green v. Interstate United Mgmt. Svc Corp.,*
    784 F.2d 827, 831 (3d Cir. 1984)........................................................ 23

*Holeman v. Nat'l Business Institute, Inc.,*
    94 S.W.3d 91 (Tex App.-Houston [14th Dist.] 2002, pet. Denied) ................ 18

*Holloway v. Skinner,*
    898 S.W.2d 793, 794 (Tex. 1995) .................................................... 24,25

*Hugel v. Corp. of Lloyd's,*
    999 F.2d 206, 209 (7th Cir. 1993) ...................................................... 12

*Hughes v. Northwestern Medical Center, Inc.,*
    680 S.W.2d 838, 842 (Tex. App. –Houston [1st Dist.] 1984, writ ref'd n.r.e.)........ 21

*International Union United Auto. Aerospace & Agric Implement Workers v. Johnson Controls, Inc.,*
    813 S.W.2d 558,566 (Tex.App.-Dallas 1991, writ denied)................................ 21

*Lipcon v. Underwriters at Lloyd's, London,*
    148 F.3d 1285, 1299 (11th Cir. 1998) .................................................... 12

*Lorillard Tobacco Co. v. American Legacy Foundation,*
    903 A.2d 728 (Del. 2006)............................................................. 7,10,11

*Lowrey v. Texas A & M Univ. Sys.,*
    117 F.3d 242, 247 (5th Cir. 1997) ..................................................... 17,18

*Mary Kay, Inc. v. Woolf,*
    146 S.W.3d 813 (Tex. App-Dallas 2004, pet. Denied)....................................... 19

*Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
    858 F.2d 509, 514 n.5 (9th Cir. 1988) .............................................. 11,12,13

*Mutual Benefit Life Ins. Co. of Neward, N.J. v. Bailey,*
    190 A.2d 757 (Del. 1963)................................................................ 16

*Nat'l Fire Ins. Co. v. Eastern Shore Labs., Inc.,*
    301 A.2d 526 (Del. Super. 1973) ......................................................... 16

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page v*

*Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.,*
    616 A.2d 1192, 1195 (Del 1992) ........................................................................... 8

*R.R. Mgmt. Co. v. CFS La. Midstream Co.,*
    428 F.3d 214, 222 (5th Cir. 2005) ........................................................................ 18

*Shared Communications Svcs. Of 1800-80 JFK Boulevard Inc. v. Bell Atlantic Properties, Inc.,*
    692 A.2d 570 (Pa. Super. 1997) ....................................................................... 23,25

*Shearin v. E.F. Hutton Group, Inc.,*
    652 A.2d 578, 589 (Del. Ch. 1994) ....................................................................... 23

*Smith v. Foodmaker, Inc.,*
    928 S.W.2d 683, 685 (Tex. App.–Fort Worth 1996) ........................................ 19,20

*Spivey v. Robertson,*
    197 F.3d 772, 774 (5th Cir. 1999) cert. denied, 530 U.S. 1229 (2000). .............. 18

*Tippett v. Hart,*
    497 S.W.2d 606,609 (Tex. App-Amarillo 1973) writ ref'd n.r.e 501 S.W.2d 874
    (Tex 1973) (per curiam) ...................................................................................... 21

*Valores Corporations, S.A. de C.V. v. McLane Co.,*
    945 S.W.2d 160, 167-68 (Tex. App.-San Antonio 1997, writ denied) ...... 11,24,25

*Vartec Telecom, Inc. v. BCE Inc.,*
    2003 WL 22364302 (N.D. Tex. October 9, 2003) ............................................ 11,15

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page vi*

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs Susan Harrison; William G. Harrison III, individually and as a Trustee for the Harrison Family Trust and The Emily Waldrup Trust; Cindy Nosser; Kathy Allen, Pat Allen; Tina Harrison; W.G. Harrison IV; Larry Luxenberg; and John Shelton (collectively "Plaintiffs"), in support of their Response to Defendant the Procter & Gamble Company's (hereinafter "P&G") Motion to Dismiss, Transfer or Stay would respectfully show as follows:

## I.    FACTUAL AND PROCEDURAL BACKGROUND.

Plaintiffs were shareholders in a small Wichita Falls, Texas based company called Zooth, Inc. Zooth was in the business of designing and distributing children's manual and battery powered-toothbrushes and toothpaste.    (Plaintiffs' Original Petition ¶¶5.1) (hereinafter Pet. "¶¶"). Plaintiffs eventually sold their interests in Zooth to The Gillette Company ("Gillette") through the Stock Purchase Agreement, i e, the Agreement, on June 4, 2004. (Pet. ¶¶ 5.2-5.5). (A copy of the Agreement is attached as Tab 2 to the Joint Appendix to Joint Motion Submission). In addition to the initial purchase price for Defendants' interest in the company, Gillette agreed to pay performance based deferred compensation to Defendants in the form of a percentage of net sales of certain products within a stated minimum and maximum possible payout. (Pet. at ¶5 4) (Agreement at §2.2.1(b); App. 00020-21). P&G's interference with Gillette's and Zooth's performance as it relates to the payment of this deferred compensation is the subject of the Defendants' tortious interference claim against P&G in this action. (Pet. at ¶¶6.1-6.4).

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 1*

The Agreement also contains a provision entitled *"Succession and Assignment; No Third-Party Beneficiary"* which states in relevant part as follows:

> "<u>Subject to the immediately following sentence</u>, this Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, each of which such successors and permitted assigns will be deemed to be a party hereto for all purposes hereof."

> "No party may assign, delegate or otherwise transfer either this Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other parties; <u>provided however, that the Buyer [Gillette] may (a) assign any or all of its rights and interests hereunder to one or more of its Affiliates</u>, and (b) designate one or more of its Affiliates to perform its obligations hereunder, in each case, so long as Buyer is not relieved of any Liability hereunder."

> "<u>Except as expressly provided here</u>, this Agreement is for the sole benefit of the Parties and their permitted successors and assignees and <u>nothing herein expressed or implied</u> will give or be construed to give any Person, other than the parties and such successors and assignees, <u>any legal or equitable rights hereunder</u>."
> (See Agreement at ¶12.2; App. 00063) (emphasis added).

The term "Affiliate" is defined so as to include a parent corporation. (See Agreement at page 2; App. 00010).

Lastly, the Agreement contains forum and venue selection clauses for disputes "between the parties." Specifically, those provisions state as follows:

> 12.12.1 <u>Jurisdiction</u>. Subject to the provisions of Sections 2.5.4 and 10.4.5, each party to this agreement, by its execution hereof, (a) hereby irrevocably submits to the exclusive jurisdiction of the state courts of the State of Delaware or the United States District Court located in the State of Delaware <u>for the purpose of any Action between the parties</u> arising in whole or in part under or in connection with this Agreement, (b) hereby waives to the extent not prohibited by applicable law, and agrees not to assert, by way of motion, as a defense or otherwise, in any such Action, any

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 2*

claim that is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that any such Action brought in one of the above-named courts should be dismissed on grounds of forum non conveniens, should be transferred or removed to any court other than one of the above-named courts, or should be stayed by reason of the pendency of some other proceeding in any other court other than one of the above-named courts, or that this Agreement or the subject matter hereof may not be enforced in or by such court and (c) hereby agrees not to commence any such Action other than before one of the above-named courts  Notwithstanding the previous sentence a party may commence any Action in a court other than the above-named courts solely for the purpose of enforcing an order or judgment issued by one of the above-named courts

> 12.12.2 <u>Venue</u>.  Each party agrees that <u>for any Action between the parties</u> arising in whole or in part under or in connection with the Agreement, such party bring Actions only in the State of Delaware.  Each party further waives any claim and will not assert that venue should properly lie in any other location within the selected jurisdiction

(App. 00065-66) (emphasis added).

Five months after the sale of Plaintiffs' interests in Zooth closed, Gillette announced that it was going to be acquired by P&G.  (Petition at ¶5 5).  This takeover was consummated on October 1, 2005, when P&G merged with Gillette.  Although Gillette continued to exist as a Delaware corporation following the merger, it became a wholly-owned subsidiary of P&G.  (Pet. at ¶5 5)

On June 2, 2006, following the merger and after P&G had engaged in numerous acts designed to interfere with the sale of Zooth products and favor P&G's own competing products, the Plaintiffs sued P&G in state district court in Wichita Falls, Texas for tortious interference alleging that P&G interfered with and prevented Gillette and/or Zooth from fully performing with respect to allowing Plaintiffs the opportunity to earn the deferred

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 3*

compensation based on a percentage of sales as set forth in the Agreement. (Original Petition at ¶¶5.5 and 6.1-6.4)

Plaintiffs then commenced settlement discussions with P&G and in the course of those discussions promised to refrain from serving P&G with the suit so long as negotiations were ongoing. (Chaiken Dec. at ¶¶7). In midst of these discussions, P&G notified Plaintiffs that P&G considered the filing of the Texas Suit to be a violation of the Forum Selection clause of the Agreement. (Chaiken Dec. at ¶¶6; Letter of July 13, App.00087). When Plaintiffs requested confirmation from P&G that it had been assigned Gillette's rights pursuant to the Agreement, including those arising under the Forum Selection clause, P&G refused to provide the confirmation and responded by removing the suit to this Court and filing this suit in what it acknowledged to be a procedural maneuver to "level the playing field." (Chaiken Dec at ¶¶7; Letter of July 24, 2006 and July 25, 2006 - App. 00091 and 00093). Eventually, in the course of resolving issues with respect to the scope of discovery concerning P&G's motion to dismiss filed in Texas, P&G provided Defendants with an affidavit that confirmed that Gillette had in fact **not** assigned its interest in the Agreement to P&G or anyone else. (Affidavit of Susan S. Felder –App.00096, ¶5) (Felder. Aff).

*Plaintiffs' Brief in Support of Response to Defendant
P&G's Motion to Dismiss, Transfer, or Stay
Page 4*

## II.    INTRODUCTION AND SUMMARY OF ARGUMENT.

   A.    The Agreement upon which P&G's Motion is based does not require dismissal, stay or transfer of this action and, in fact, the terms of the Agreement require that P&G's Motion be denied and that this suit be maintained in this forum.

P&G claims that this suit must be dismissed, stayed or transferred due to the existence of a forum selection clause governing the Agreement between Plaintiffs and Gillette. However, by its express terms, the forum selection clause only governs "Action[s] between the parties." P&G is not a party to the Agreement. Moreover, although the Agreement specifically provides a mechanism through which Gillette may assign its interests in the Agreement to its Affiliates without first obtaining the consent of Plaintiffs, P&G has also admitted that Gillette did not execute such an assigment. Absent such an assignment (or successor status which P&G does not assert), the Agreement expressly disclaims the grant of any rights, whether "legal or equitable" upon any non-parties to the Agreement. Consequently, as a matter of law, Plaintiffs are not contractually obligated to sue P&G in the forum designated by the Agreement for disputes "between the parties."

Recognizing the limited applicability of the forum selection agreement to "parties," P&G nonetheless advances two arguments that, for all intents and purposes, would require that the Agreement be reformed to allow P&G to enjoy the benefits of the forum selection agreement despite its status as a non-party and non-assignee. First, P&G argues that it is so "closely related" to Gillette that Plaintiffs should have foreseen that the terms of the Agreement should be applied to P&G. However, at the time Plaintiffs entered into the

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 5*

Agreement with Gillette, P&G was not an affiliate of Gillette and would not become one until the merger between Gillette and P&G became final – almost sixteen months __after__ the Agreement between Plaintiffs and Gillette was executed. Consequently, it certainly was not foreseeable to Plaintiffs that a party, who was neither affiliated with Gillette at the time of the Agreement, nor an assignee of Gillette's interests, should receive the benefits of the forum selection clause in contravention of the term of the Agreement disclaiming the grant of legal or equitable rights upon non-parties and non-assigns.

Second, P&G asserts that Plaintiffs are "equitably estopped" from denying the applicability of the forum selection clause to P&G because it would be unfair to allow Plaintiffs to bring a claim for tortious interference with the Agreement in a forum other than that provided for in the Agreement for disputes "between the parties." However, the application of equity does not allow the use of estoppel in a manner that patently conflicts with the clear and unambiguous terms of the contract at issue so as to essentially create a new contract in conflict with the first. In the present case, since the forum selection agreement, by its express terms, does not apply to non-parties and P&G has not satisfied the terms of the Agreement with respect to conferring contractual beneficiary status to non-parties, P&G should not be allowed to use the equitable doctrine of estoppel to vary those express terms upon which Plaintiffs themselves justifiably relied in entering into the Agreement.

       **B.**    **The Court Should Not Dismiss Plaintiff's Claim For Tortious Interference For Failure To State A Claim Upon Which Relief May Be Granted.**

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 6*

Plaintiffs' claim for tortious interference is properly asserted pursuant to Texas law. Texas law applies to the claims and all of the required elements of tortuous interference are plead. Moreover, the privilege claimed by P&G as the parent corporation of Gillette is inapplicable in this case for two reasons. First, acts constituting interference occurred prior to the merger between P&G and Gillette. Second, P&G is alleged to have acted in furtherance of its own interests rather than the financial interest of its subsidiary Gillette by favoring P&G products over Zooth products that Gillette had contracted to market.

## II.    JURISDICTION AND VENUE ARE PROPER IN THIS COURT PURSUANT TO THE EXPRESS TERMS OF THE AGREEMENT.

### A.    Rules of Contract Construction Under Delaware law.

The Agreement provides that the rights of the parties thereunder will be governed by and construed in accordance with the laws of the state of Delaware. (Agreement at ¶ 12.11; App. 00065). When interpreting a contract under Delaware law, the role of a court is to effectuate the parties' intent. *Lorillard Tobacco Co. v. American Legacy Foundation*, 903 A.2d 728, 739 (Del. 2006). In doing so, the court is constrained by the words utilized by the parties and the plain meaning of those words where no special meaning is intended. *Id.* The court's goal should be to determine what a reasonable person in the position of the parties would have thought the language of a contract means. *Id.*

In order to accomplish this, the court should give clear and unambiguous language its ordinary and usual meaning. *Id.* When the language of a contract is clear and unequivocal, the parties will be bound by its plain meaning because creating an ambiguity

where none exists could, in effect, create a new contract with rights and obligations to which the parties had not agreed. *Id.* Moreover, a contract is not made ambiguous simply because the parties do not agree upon its construction. *Id.* A contract is ambiguous only when the provisions at issue are reasonably susceptible of different interpretations. *Id* "'Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty '" *Id.* (quoting *See Rhone-Poulenc Basic Chems. Co. v. Am Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del.1992)).

In the present case, neither Plaintiffs nor P&G contends that the language of the forum selection clause is ambiguous. Indeed, as is demonstrated below, the portions of the Agreement at issue here are crystal clear and any reasonable person entering into the Agreement would have rightfully concluded that the forum selection clause only applied to parties and to those persons to whom the parties had affected an assignment of their interests under the Agreement.

## B. Agreement Does Not Require That Plaintiffs File This Suit In Delaware.

P&G claims that the Agreement, by its very terms, required Plaintiffs to file this suit in Delaware and thus jurisdiction and venue are improper in this Court. However, P&G's argument is belied by the unequivocal terms of the Agreement. Specifically, ¶ 12.12.1 of the Agreement (entitled "Jurisdiction") states that:

> [E]ach party to this agreement, by its execution hereof, (a) hereby irrevocably submits to the exclusive jurisdiction of the state courts of the State of Delaware or the United States District Court located in the State of Delaware for the purpose of any Action <u>between the parties</u> arising in whole or in part under or in connection with this Agreement . . . .

Agreement at ¶ 12.12.2 (emphasis added) (App. 00065). Similarly, § 12.12.2 (entitled

"Venue") states that:

> Each party agrees that **for any Action <u>between the parties</u>** arising in whole
> or in part under or in connection with the Agreement, such party bring
> Actions only in the State of Delaware.

(Agreement at ¶ 12.12.2 (emphasis added) (App. 00066)).

As set forth above, the Forum Selection Clause relied on by P&G is specifically

limited to "Action[s] between the parties." Although P&G is clearly not a named party to

the Agreement, P&G attempts to evade the limited application of the provision by claiming

"party" status as an affiliate and a "permitted assign." Although P&G is admittedly an

affiliate under the terms of the Agreement, the term of the Agreement with respect to

assigns and third-party beneficiaries disproves P&G's assertion that it is entitled to "party"

status. Specifically ¶ 12.2 of the Agreement, entitled "Succession and Assignment; No

Third-Party Beneficiary," states in relevant part as follows:

> **Subject to the immediately following sentence,** this Agreement will be
> binding upon and inure to the benefit of the parties hereto and their
> respective successors and permitted assigns, each of which such successors
> and permitted assigns will be deemed to be a party hereto for all purposes
> hereof."

> No party may assign, delegate or otherwise transfer either this Agreement
> or any of its rights, interests or obligations hereunder without the prior
> written approval of the other parties; **provided however, that the Buyer**
> **[Gillette] <u>may</u> (a) assign any or all of its rights and interests hereunder to**
> **one or more of its Affiliates, and (b) designate one or more of its Affiliates**
> **to perform its obligations hereunder,** in each case, so long as Buyer is not
> relieved of any Liability hereunder.

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 9*

> **Except as expressly provided here,** this Agreement is for the sole benefit of the Parties and their permitted successors and assignees and nothing herein expressed or implied will give or be construed to give any Person, other than the parties and such successors and assignees, any legal or equitable rights hereunder.

(Agreement at ¶12.2 (emphasis added) (App. 00063)).

Thus, although the Agreement provides that it "will be binding upon and inure to the benefit of the parties hereto and their respective successors and **permitted assigns,**" this provision is expressly made subject to the "immediately following sentence." (Id.) That next sentence sets forth the limitations governing to whom the contractual rights may be assigned and under what circumstances. Specifically, the Agreement provides that with respect to non-affiliates of the parties, an assignment or delegation may only be made with the "prior written approval of the other parties." (Id.) However, an assignment "**may**" be made without such "prior written approval" if the assignee is an "Affiliate" of the assignor. Consequently, although the Agreement gave Gillette the discretion to execute an assignment of its interests therein to P&G as an Affiliate, P&G admits that such an assignment never took place. (Felder Aff., App. 00096, ¶5)

In light of the precise and unambiguous nature of the contractual language limiting the application of the Forum Selection Clause to disputes "between the parties," and the similarly clear and unequivocal terms limiting the benefits of the Agreement to parties and their legal assigns, it is inescapable that a reasonable person would have believed that the application of the provision was limited to parties and those persons to whom the parties had affected an assignment of their interests under the Agreement. *See Lorillard Tobacco Co.*

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 10*

*v. American Legacy Foundation*, 903 A.2d 728, 739 (Del. 2006) (applying reasonable person standard in contract construction). To hold otherwise in the face of language as clear and unequivocal as is present here would "in effect, create a new contract with rights and obligations to which the parties had not agreed." *Id.* Consequently, by its clear and unambiguous terms, the Forum Selection Clause does not require dismissal, transfer or stay due to improper jurisdiction or venue.

### C. P&G Cannot Enforce The Jurisdiction And Venue Provisions Despite Its Status As A Nonsignatory Because Doing So Would Conflict With The Express Terms Of The Agreement.

P&G asserts that it is entitled to the benefit of the Forum Selection Clause despite the fact that it is not a party and despite the absence of an assignment by Gillette to P&G. P&G's argument, in a nutshell, is that P&G is so "closely related" to Gillette that Plaintiffs should have foreseen that the terms of the Agreement should be applied to P&G. However, P&G's argument fails for two reasons. First, at the time Plaintiffs entered into the Agreement with Gillette, P&G was not associated in any way with Gillette and would not become an Affiliate of Gillette's until the merger became final – over sixteen months <u>after</u> the Agreement between Plaintiffs and Gillette was executed. (Pet ¶ 5.5). Second, where a forum selection clause is expressly limited to disputes between the parties, it is not foreseeable that non-parties would be able to claim the benefit of a clause that, by its very terms, excludes them.

Citing the Ninth Circuit's opinion in *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n 5 (9th Cir. 1988), among other authorities, P&G claims that nonsignatories to an

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 11*

agreement may enforce forum selections clauses so long as "the nonsignatory is 'closely related' to a signatory or the alleged conduct is closely related to the contractual relationship." (Brief in Support of Motion at p. 8). However, "[t]o bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound ." *D.B., Inc. v. Nat'l Admin. Solutions Corp.*, 2004 WL 865842 , *3 (N.D.Tex. April 21, 2004) (Buchmeyer, J ); *see also Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998) (must be foreseeable that nonsignatory will be bound); *Baker v. LeBoef, Lamb, Leiby, & Macrae*, 105 F.3d 1102 (6th Cir 1997) (same); *Hugel v. Corp. of Lloyd's*, 999 F 2d 206, 209 (7th Cir. 1993) (same); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (transaction participants entitled to benefits of forum selection clause)

The Agreement at issue was dated June 4, 2004. At that time, P&G and Gillette were not related companies (Pet. ¶5.5). In fact, the potential merger of the two companies was not announced until November 1, 2004 and the transaction was not consummated until October 1, 2005. (Id.; Delaware Compl. ¶¶ 3 and 24). Accordingly, this case is almost identical to a California case applying *Manetti-Farrow* in which the court declined to allow a parent corporation to benefit from a forum selection clause to which it was not a party Specifically, in *Berclain America Latina, S.A. v. Baan Co., N.V.*, 87 Cal Rptr.2d 745, 750 (Cal. App. 1999), the court of appeals held that the Baan Company ("Baan") did not have standing to assert the applicability of a forum selection clause contained in a contract entered into by another corporation four years prior to the corporation's merger with Baan.

In *Berclain*, the plaintiff Berclain America Latina ("BAL") sued Baan for tortious interference with the contract between BAL and Berclain Group. *Id.* at 746-47. Baan moved to dismiss the suit based on the existence of a forum selection clause between BAL and Berclain Group that specified Quebec as the exclusive forum for disputes. *Id.* at 747 Baan argued that under the principles set forth in *Manetti-Farrow*, it was entitled to dismissal of the suit because it was "closely related" to Berclain Group and was a "transaction participant" entitled to assert the clause. The California court of appeals focused on the after the fact acquisition of the Berclain Group by Baan and held that since Baan had no role in the contractual transaction in which the forum selection clause was included, it did not have standing to claim the benefits of that forum selection clause. *Id.* at 750; *see also, D.B., Inc*, 2004 WL 865842 at *3 (not foreseeable that a claim based on a first contract would be subject to a forum selection clause in a second later executed agreement with a different although related party). The *Berclain* court also held that the mere fact that the underlying lawsuit was premised at least in part on the terms and conditions of the agreement containing the forum selection clause was insufficient to trigger the application of that provision *Id.*

Similarly, in *Baker v. LeBoef, Lamb, Leiby, & Macrae*, 105 F 3d 1102 (6th Cir 1997), the Court of Appeals for the Sixth Circuit held that the general counsel for Lloyds of London was not entitled to the benefit of a forum selection clause between the plaintiffs and Lloyds even though Lloyds required the plaintiffs to retain the law firm for tax representation. The court also held that the mere fact that the claim against the attorneys was essentially a

backdoor means of recouping losses in plaintiffs' Lloyds investment was not sufficient to allow the law firm to claim the benefits of the forum selection clause. *Id.* at 1106

In the present case, as in *Berclnin*, it is undisputed that P&G was not a transaction participant in the process leading up to the Agreement. Moreover, as is discussed in the section above, it would hardly be foreseeable to a reasonable person entering into the Agreement, in which the Forum Selection is Clause is expressly limited to the parties to the Agreement, that a party, who was neither affiliated with Gillette at the time of the Agreement, nor an assignee of Gillette's interests, should receive the benefit of the forum selection clause in contravention of the term of the Agreement disclaiming the grant of legal or equitable rights upon non-parties and non-assigns.

P&G has not, and cannot point the Court to any cases in which a non-party has been allowed to claim the benefit of a forum selection clause that is, by its clear and unequivocal terms, limited to disputes "between the parties." Consequently, the Court should deny P&G's motion to dismiss or transfer based on its alleged "close relationship" with the underlying transaction between Gillette and Plaintiffs.

### D. Plaintiffs Are Not Equitably Estopped From Insisting On The Application Of The Agreement As It Was Written And Agreed Upon By The Parties.

P&G argues that the principle of equitable estoppel should be applied to prohibit Plaintiffs from denying the applicability of the Forum Selection Clause to the claims asserted here. P&G's argument rests on the premise that it would simply be unfair to allow Plaintiffs to assert a claim arising out of the Agreement without applying the forum

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 14*

selection clause of the Agreement. P&G's only authority for this proposition is two unpublished district court opinions – *Vartec Telecom, Inc. v. BCE Inc.*, 2003 WL 22364302 (N.D. Tex. October 9, 2003) and *Alternative Delivery Solutions v. R.R. Donnelley & Sons Co.*, 2005 WL 1862631 (W.D. Tex. July 8, 2005). However, neither *Vartec* nor *Alternative Delivery* involved a forum selection clause, such as the one here that is expressly limited to disputes "between the parties." Instead, in both *Vartec* and *Alternative Delivery*, the parties unconditionally agreed to submit to the jurisdiction of specific courts for the purpose of any dispute arising out of the subject contract. *See Vartec*, 2003 WL 22364302 at *2; *Alternative Delivery*, 2005 WL 1862631 at *5. Thus, the plaintiffs in those cases were estopped from claiming that a nonparty to the contract could not enforce a covenant that plaintiffs had unequivocally made to submit to the exclusive jurisdiction of a particular forum for all disputes under the relevant agreement.

In contrast, the Plaintiffs in this case agreed to:

irrevocably submit[ ] to the exclusive jurisdiction of the state courts of the State of Delaware or the United States District Court located in the State of Delaware **for the purpose of any Action <u>between the parties</u>** arising in whole or in part under or in connection with this Agreement . . . .

Agreement at ¶ 12.12.2 (emphasis added) (App. 00065). Plaintiffs relied on those precise terms when they entered into the Agreement and have done nothing in conflict with those terms since that time.

Under such circumstances, fairness and equity certainly favors the Plaintiffs because equity does not allow the use of estoppel in a manner that patently conflicts with the clear

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 15*

and unambiguous terms of a contract so as to essentially create a new contract in conflict with the first *See e.g., Bilmar Drilling, Inc. v. IFG Leasing Co.*, 795 F.2d 1194 (5th Cir. 1986) (estoppel cannot be used to enforce "put" agreement that was represented to exist but was inconsistent with terms of parties' lease because estoppel is a defensive measure that cannot be used to create a new and different contract); *Nat'l Fire Ins Co v. Eastern Shore Labs.*, Inc. 301 A.2d 526 (Del. Super 1973) (citing *Mutual Benefit Life Ins. Co. of Newark, N.J. v. Bailey*, 190 A.2d 757 (Del. 1963)) (estoppel cannot be used to radically change the terms of a contract because estoppel cannot be used to create a new and different contract).

In the present case, since the Forum Selection Clause, by its express terms, does not apply to non-parties and P&G has not satisfied the terms of the Agreement with respect to conferring contractual beneficiary status to non-parties, P&G should not be allowed to use the equitable doctrine of estoppel to vary those express terms upon which Plaintiffs themselves justifiably relied in entering into the Agreement.

### E. A Transfer Pursuant To 28 U.S.C. § 1404(a) Is Not Appropriate Under The Circumstances.

P&G asks the Court to transfer this action to Delaware to be consolidated with the second filed Delaware lawsuit for purposes of convenience. However, P&G fails to point the Court to any convenience factors other than the fact that P&G filed a mirror image declaratory judgment action in that Court subsequent to the filing of this suit. In fact, P&G admits that there are no documents or witnesses located in Delaware (See Felder Aff.; App. 00096, ¶6).

Although a transfer might theoretically further judicial economy, it is P&G who created the duplicative litigation in the first place by forum shopping in an attempt to "level the playing field." (See Letters of Jeffrey D. Ireland dated July 24 and 25: App. 00091 and 00093). If P&G is truly concerned about the "interests of justice," it can easily advance that interest by dismissing its second filed suit and filing its counterclaims, if any, in this first filed suit. Consequently, P&G's motion to transfer pursuant to 28 U.S.C. § 1404(a) must be denied.

### III.   PLAINTIFFS' CLAIM FOR TORTIOUS INTERFERENCE MUST NOT BE DISMISSED.

#### A.   Standard for a Motion to Dismiss.

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Contes v. Heartland Wireless Communications, Inc.*, 26 F.Supp.2d 910, 913-14 (N.D. Tex.1998); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 17*

beyond the pleadings. *Id.; Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247.

### B.     Texas Law Governs Plaintiffs' Tortious Interference Claim.

When sitting in diversity jurisdiction, a federal court must apply the choice of law rules of the forum state, in this case Texas. *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005). Although P&G argues that the Delaware choice of law provision in the Agreement requires that all claims relating to the Agreement be governed by Delaware law, P&G offers absolutely no analysis under Texas choice of law principles to support this claim. Instead, P&G merely cites the court to cases pertaining to forum selection clauses. However, choice of law provisions are governed by an entirely different analysis than forum selection clauses. *Holeman v. Nat'l Business Institute, Inc.*, 94 S.W.3d 91 (Tex. App. – Houston [14th Dist.] 2002, pet. denied). The difference in analysis is evident in The Restatement (Second) of Conflict of Laws. *Id.* The application of sections 187 and 188 of the Restatement dealing with contractual choice of law provisions involves a detailed and complex analysis of several factors and a balancing of interests between the contractual forum and the forum in which suit is brought. *Id.*; Restatement (Second) of Conflict of Laws §§ 187 and 188 (1969). In contrast, section 80 of the Restatement entitled, "Limitations Imposed By Contract of Parties" merely provides: "The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 18*

effect unless it is unfair or unreasonable " *Id.*; Restatement (Second) of Conflict of Laws § 80 (1969). Accordingly, the cases cited by P&G have no relevance to the determination of choice of law

Texas courts generally give effect to parties' contractual choice of law so long as the contract bears a substantial relationship to the chosen state *Mary Kay, Inc v. Woolf,* 146 S.W.3d 813 (Tex. App – Dallas 2004, pet. denied). However, in cases involving tort claims that implicate the terms of the agreement containing the contractual choice of law provision, Texas courts instead apply the "most significant relationship" test *See Smith v. Foodmaker, Inc.,* 928 S.W.2d 683, 685 (Tex. App. – Fort Worth 1996) (citing *Gutierrez v. Collins,* 583 S.W.2d 312 (Tex 1979)). In *Foodmaker,* the court of appeals held that the California choice of law provision in a franchising agreement did not govern the issue of agency in a premises liability action where the party urging application of California law was not a party to the franchising agreement and the claim sounded in tort rather than contract *Id* at 685. Instead, the *Foodmaker* court applied the "most significant relationship test" to hold that Texas law governed the tort claim asserted by plaintiffs. *Id.*

In the present case, Texas law clearly has the "most significant relationship" to the "occurrence and the parties " The facts to be considered in making a determination as to which state has the "most significant relationship" include:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

*Id.* (quoting Restatement (Second) Of Conflict Of Laws § 145 (1971))

All of these factors weigh in favor of the application of Texas law. The injury occurred to Plaintiffs at Zooth's offices in Wichita Falls, Texas. (Pet. ¶ 5.1) Moreover, although the conduct that caused the injury may have originated either at P&G's headquarters in Ohio or Gillette's headquarters in Massachusetts, that conduct was directed to and eventually occurred at Zooth's offices in Texas. Likewise, all of the Plaintiffs are domiciled in Texas and none of the parties are domiciled in Delaware. (Pet. ¶ 2.1). P&G is domiciled and incorporated in Ohio and does business throughout the world. (Pet. ¶2.2). In fact, the only contact with Delaware is that Gillette is incorporated there although it was headquartered in Massachusetts prior to the merger with P&G. (App 000108). Finally, the parties' relationship is centered where the Zooth business with which P&G tortiously interfered is located, i.e., Wichita Falls, Texas. Considering all of the above factors, it is readily apparent that Texas has the "most significant contacts" with the "occurrence and the parties" and that Texas law should govern Plaintiffs' tortious interference lawsuit. *See Foodmaker, Inc.*, 928 S.W.2d at 685

  **C.** **Plaintiffs May Assert A Claim For Tortious Interference Against P&G For Interfering With The Contract Between Plaintiffs And Gillette Even Absent a Breach if the Interference Made the Performance More Difficult and Caused Damages to Plaintiffs.**

Under Texas law, tortious interference with a contract is established if the plaintiff proves: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual

damage or loss resulted. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex.1996). Although P&G has asserted that Plaintiffs' claim fails due the absence of a specific averment that Gillette breached the Agreement, under Texas law, it is not necessary for the interference to cause an actual breach of the subject contract; any act that retards performance or makes more performance more difficult or burdensome is sufficient to constitute tortious interference. *Exxon Corp. v. Miesch*, 180 S.W.3d 299 (Tex. App. – Corpus Christi 2005); *International Union United Auto Aerospace & Agric. Implement Workers v. Johnson Controls, Inc.*, 813 S.W.2d 558, 566 (Tex App. – Dallas 1991, writ denied); *Hughes v. Northwestern Medical Center, Inc.*, 680 S.W.2d 838, 842 (Tex. App. – Houston [1st Dist.] 1984, writ ref'd n.r.e.) (interference which makes performance of less value to the one entitled to performance, may constitute an actionable tort); *Tippett v. Hart*, 497 S.W.2d 606, 609 (Tex. App. – Amarillo 1973) writ ref'd n.r.e. 501 S.W.2d 874 (Tex. 1973) (per curiam).

Accordingly, so long as P&G interfered with Gillette's performance under the Agreement such that the interference hindered the performance and resulted in damages to Plaintiffs, a claim for tortious interference exists under Texas law. Since Plaintiffs' pleading meets this requirement, the Motion to Dismiss must be denied.

   D.    **P&G's Acts of Interference Prior To The Merger Between P&G And Gillette Form the Basis, In Part, for Plaintiffs' Claims.**

P&G asserts that it cannot be liable for tortious interference because, as the parent corporation Gillette, it cannot, as a matter of law, have tortiously interfered with the contract of its subsidiary. However, P&G's argument fails to recognize that there was a

lengthy period of interference prior to the consummation of the merger.

Plaintiffs sold their shares in Zooth to Gillette on June 4, 2004. (Pet. 5 5). As part of the consideration for their shares, Plaintiffs were to receive deferred compensation based on Zooth's performance. (Pet. 5.4; Agreement at 2.2.1(b); App. 00020-21). On or about November 1, 2004, just five months after the Zooth sale closed, Gillette announced that it was going to be acquired by P&G  Plaintiffs have alleged that P&G's interference began at that time  (Id ) P&G closed its merger with Gillette and assumed control of the Gillette as a subsidiary on or about October 1, 2005  (Id.) Prior to that time, as provided in the Merger Agreement between P&G and Gillette, each company was to "carry on their respective businesses in the ordinary course" and neither company had "the right to control or direct" the other's operations.  The companies further agreed that each would "exercise complete control and supervision over its respective operations." (See Merger Agreement at §§4.01 , 4.04; App. 000243).

Although, P&G argues, albeit incorrectly, that Plaintiff cannot state a claim for tortious interference by P&G, as a parent corporation, with the contract of its subsidiary Gillette, P&G does not address the eleven months of interference that Plaintiffs allege occurred between the announcement of the merger and its closing     The privilege, if any, claimed by P&G as a parent corporation is certainly inapplicable during this time Consequently, P&G's Motion to Dismiss Complaint must be denied.

    E.    **Plaintiffs' claim for Tortious interference is not barred as a matter of law by the Parent/Subsidiary Relationship between P&G and Gillette.**

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 22*

Citing Delaware law, P&G claims that a parent cannot be liable under any circumstances for interfering with the performance of its wholly owned subsidiary (Motion at p. 16). However, P&G's position is overstated with respect to Delaware law. In fact, a careful reading of Delaware law only creates a qualified privilege for parent corporations that may in fact allow imposition of liability upon a parent corporation depending on the outcome of the balancing test elaborated in § 767 of the Restatement (Second) of Torts. *See Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 589 (Del. Ch. 1994). Among the factors that the court must examine in a tortious interference case are "the actor's conduct," "the actor's motive," "the interests of the other with which the actor's conduct interferes," "the interests sought to be advanced by the actor," and "the relations between the parties." Restatement (Second) of Torts § 767(a), (b), (c), (d), & (g); *see also Green v. Interstate United Mgmt. Svc. Corp.*, 784 F.2d 827, 831 (3d Cir. 1984) (applying factors in context of tortious interference claim asserted for parent's interference with subsidiary's contract).

An analogous case applying the Restatement balancing factors is *Shared Comm. Svcs. of 1800-80 JFK Boulevard, Inc. v. Bell Atlantic Properties, Inc.*, 692 A.2d 570 (Pa. Super. 1997). In *Shared Communications Services*, the court, affirmed a judgment for tortious interference against a parent corporation for interfering with the contract of its subsidiary by, among other things, instructing the subsidiary to terminate the third-party's contract and enter into another contract with a different subsidiary of the parent. *Id.* at 577. Applying the balancing factors set forth above, the court found it highly relevant that the jury could have

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 23*

concluded from the evidence that "a corporate philosophy promoting self-interests over known contractual and/or legal responsibilities pervaded the conduct of [the] Tort Defendants." *Id.* at 576.

Likewise, although there is a split in authorities in the Texas state courts of appeals, the judges sitting in this district have followed the line of cases holding that a parent can tortiously interfere with the contract of its subsidiary under certain circumstances. *See Affiliated Computer Svcs., Inc. v. Caremark, Inc.*, 49 F.Supp.2d 882 (N.D. Tex. 1999); *Ashlar Financial Svcs. Corp. v. Sterling Fin. Co., Inc.*, 2002 WL 206439, *8 (N.D. Tex. Feb. 8, 2002) (denying motion to dismiss). Both cases found the reasoning of the San Antonio Court of Appeal in *Valores Corporativos, S.A. de C.V. v. McLane Co.*, 945 S.W.2d 160, 167-68 (Tex. App.-San Antonio 1997, writ denied) persuasive. In *Valores*, the court expressly held that "a parent corporation is legally capable of tortiously interfering with its wholly-owned subsidiary's contractual relations." *Id.* at 168.

The *Valores* court based its ruling on, among other things, the Texas Supreme Court's opinion in *Holloway v. Skinner*, 898 S.W.2d 793, 794 (Tex. 1995). In *Holloway*, the Texas Supreme Court held that the office of a corporation could tortiously interfere with the corporation's contracts under circumstances in which the office was acting in his own interest and not that of the corporation. *Holloway*, 898 S.W.2d at 794. The court in *Valores* applied this holding to the parent/subsidiary context since, like a corporate office, a parent's interest will not always be coterminous with that of its subsidiary and that circumstances may arise where the parent may pursue its interests to the detriment of the

subsidiary. *Valores*, 945 S.W.2d at 168.

Although, the courts in *Valores* and *Ashlar* observed that the parent's act of interference may be privileged when the contract threatens a present economic interest of the subsidiary and the parent does not employ wrongful means or act with an improper purpose in affecting a breach by the subsidiary, that is not what is alleged to have occurred here. *Id.*; *Ashlar*, 2002 WL 206439 at *8. In this case, the Plaintiffs intend to prove that P&G interfered with Gillette's duties to market the Zooth products for the purpose of advancing a non-Gillette product line to which the Plaintiffs' performance bonuses did not attach. Thus, as was the defendant in *Shared Communications Services* and as was discussed in *Holloway*, *Valores* and *Ashlar* with regard to what constitutes actionable conduct, P&G was acting in its own economic interest and contrary to that of Gillette when it interfered with the contract between Gillette and Plaintiffs. Consequently, notwithstanding the parent/subsidiary relationship between P&G and Gillette, Plaintiffs have stated and will prove a claim for tortious interference with the contract between Gillette and Plaintiffs. Therefore, P&G's Motion to Dismiss must be denied.

### F. CONCLUSION.

As is demonstrated above, Defendant's Motion to Dismiss, Transfer, or Stay is wholly without merit. The Forum Selection Clause of the Agreement does not require the dismissal, transfer or stay of this action due to improper venue or lack of subject matter jurisdiction. In fact, the Agreement should be enforced exactly as written and not, for all intents and purposes, be reformed to suit P&G's wants. In addition, Plaintiffs' claim for

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 25*

tortious interference based on P&G's acts, both before and after the merger with Gillette,

satisfies the requirement of Texas law and is not subject to dismissal. Consequently,

Defendant's Motion to Dismiss, Transfer or Stay must be denied in its entirety.

CHAIKEN & CHAIKEN, P.C.

Robert L. Chaiken
State Bar No. 04057830
Kenneth B. Chaiken
State Bar No. 04057800
One Galleria Tower
13355 Noel Road, Suite 600
Dallas, Texas 75240
Telephone: (214)265-0250
Telecopy: (214)265-1537

ATTORNEYS FOR PLAINTIFFS

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 26*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served via certified mail, return receipt requested upon below counsel of record on this 19th day of October, 2006.

Steve Briley
Banner Briley & White, LLP
4245 Kemp Blvd.
Suite 200
Bank One Tower
Wichita Falls, TX 76308

D. Jeffrey Ireland
Faruki, Ireland & Cox, P.L.L.
500 Courthouse Plaza, S.W.
109 North Ludlow Street
Dayton, OH 45402

George M. Kryder
Vinson & Elkins
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975

_____
Robert L. Chaiken

*Plaintiffs' Brief in Support of Response to Defendant*
*P&G's Motion to Dismiss, Transfer, or Stay*
*Page 27*