# LANDIS RATH & COBB LLP

A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW

919 MARKET STREET, SUITE 600
P.O. BOX 2087
WILMINGTON, DELAWARE 19899
www.lrclaw.com

Rebecca L. Butcher
Direct Dial: 302.467.4415
Email: butcher@lrclaw.com

Telephone: 302.467.4400
Facsimile: 302.467.4450

May 15, 2007

**VIA ELECTRONIC FILING AND
HAND DELIVERY**

The Honorable Gregory M. Sleet
United States District Court for the
    District of Delaware
844 North King Street
Wilmington, Delaware 19801

> Re:     *The Proctor & Gamble Company, et al. v. Harrison, et al.*
>          **C.A. No. 06-443 (GMS)**

Dear Judge Sleet:

Currently pending before this Court is Defendants' Susan Harrison, William G. Harrison, III, Cindy Nosser, Kathy Allen, Pat Allen, Tina Harrison, W.G. Harrison, Larry Luxenburg and John Shelton ("Harrison Parties" Motion to Dismiss the Complaint ("Motion") filed in the above-referenced action. The Motion seeks dismissal of the declaratory judgment claim and breach of contract claim sought by both the Proctor & Gamble Company ("P&G") and Gillette Company ("Gillette"). Briefing was completed on the Motion on November 2, 2006. To date, this Court has not ruled on the Motion.

Prior to the filing of the complaint in this matter, the Harrison Parties initiated an action against The Proctor & Gamble Company ("P&G") in the United States District Court for the Northern District of Texas entitled *Harrison, et al. v. The Proctor & Gamble Company, C.A. No. 06-121-R* (the "Texas Action"). P&G moved to dismiss the complaint in the Texas Action. On February 8, 2006, the Texas court issued its opinion denying P&G's motion to dismiss ("Texas Opinion"); a copy of the opinion is attached hereto for the Court's reference.

As a result of the Texas Opinion, P&G had agreed to voluntarily dismiss its claims asserted in this action. However, while finalizing a stipulation to that effect, P&G filed its Motion to Dismiss the First Amended Complaint in the Texas Action. Therefore, the parties

Landis Rath & Cobb LLP
The Honorable Gregory M. Sleet
May 15, 2007
Page 2

have not finalized the dismissal of P&G's claims in this matter. Gillette has not agreed to the voluntary dismissal of its claims in this matter, though the Harrison Parties continue to contend (as described in the Motion) that these claims should also be dismissed.

The Harrison Parties respectfully submit that the holdings set forth in the Texas Opinion require the dismissal of the P&G claims and are instructive on the breach of contract claim asserted by Gillette. Specifically the Opinion states in no uncertain terms that P&G is not a party to the contract at issue in both the Texas Action and the suit pending before this Court between Gillette and Defendants. Texas Opinion at pp. 3-4. The Texas Opinion held that because P&G is not a party to the contract it does not receive the benefit of the forum-selection clause and the contract did not require the dismissal of the Texas action. Texas Opinion at pp.4-5. Based on these findings, Gillette's breach of contract claim, based solely on the filing of the Texas Action, should be dismissed.

Counsel remains available at Your Honor's convenience should the Court have any questions.

Respectfully,

Rebecca L. Butcher
(I.D. No. 3816)

cc:    Anne Shea Gaza, Esquire (via electronic filing)

581.001-16228.DOC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUSAN HARRISON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No: 7:06-cv-121-R |
| | § | |
| THE PROCTER & GAMBLE CO., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the parties' Joint Motion Submission, including Defendant The

Procter & Gamble Company's Motion to Dismiss Plaintiffs' Complaint, Transfer, or Stay;

Plaintiffs' Response; and Defendant's Reply. (Dkt. No. 17.) After considering the briefs of the

parties, the evidence before the Court, and the arguments of counsel, the Court is of the opinion

that Defendant's Motion to Dismiss or Transfer Venue should be DENIED and Plaintiffs'

Motion to Amend be GRANTED.

### I. BACKGROUND

Plaintiffs are former shareholders in Zooth, Inc., a Wichita Falls company that distributed

children's toothbrushes and toothpaste. In June 2004, Gillette purchased Zooth from Plaintiffs

for approximately $27 million plus a deferred consideration in which Plaintiffs would received

between $3 million and $12 million based upon the sales of their products. In the purchase

agreement, Plaintiffs and Gillette agreed to a forum selection clause. The clause required that

any suit between the parties to the agreement must be initiated in a court in Delaware. In

October 2005, Defendant Procter & Gamble Company merged with Gillette, and Gillette became

1

a wholly-owned subsidiary of Procter & Gamble. Although Procter & Gamble became Gillette's

parent company, Gillette never assigned its interest in the Zooth purchase agreement to Procter

& Gamble.

Plaintiffs claim that before and after Procter & Gamble merged with Gillette, Procter &

Gamble began to interfere with the sale of Zooth products in favor of Procter & Gamble's own

competing products. Eventually, Plaintiffs filed this action in a state court in Wichita Falls,

Texas. Procter & Gamble removed the action to this Court. Now Procter & Gamble asks the

Court to either dismiss Plaintiffs' case for lack of subject matter jurisdiction and for failure to

state a claim, to transfer venue to the United States District Court, District of Delaware, or to

stay the action pending the outcome of a suit, filed subsequent to this one, in Delaware state

court.

The Court finds Procter & Gamble's arguments unpersuasive and DENIES its Motion to

Dismiss. The Court also GRANTS Plaintiffs' motion to amend their complaint to more

specifically allege facts that would support their claim for tortious interference under Texas law.

## II. ANALYSIS

A.    **This Court has subject matter jurisdiction over this case and the Northern District of Texas is a proper venue.**

Procter & Gamble argues that Plaintiffs' suit should be dismissed pursuant to Federal

Rules of Civil Procedure 12(b)(1), 12(b)(3), and 28 U.S.C. § 1406(a)[1] because the Stock

---

[1]The Court need not determine which of these three vehicles for dismissal, if any, is appropriate because regardless of the method used by Procter & Gamble to urge dismissal, Procter & Gamble is not a party to the Agreement which contains the mandatory forum selection clause. Therefore, the Court need not enter the thorny jurisprudence of this Circuit in determining whether and how to follow the Supreme Court's analysis in *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988); *see also Haynsworth v. The Corp.*, 121 F.3d 956, 961

Purchase Agreement between Gillette and Plaintiffs contained a forum selection clause

mandating jurisdiction in Delaware. Procter & Gamble claims that although it was not a party to

the Agreement, a suit by Plaintiffs against Procter & Gamble is governed by the Agreement

because (1) the suit involves the enforcement of the Agreement, (2) Gillette is a wholly owned

subsidiary of Procter & Gamble, and (3) Procter & Gamble is "closely related" to a signatory of

the Agreement.

1.    Under the plain meaning of the Agreement, only "parties" to the Agreement may enforce the forum selection clause, and Procter & Gamble was not a "party" to the Agreement.

As set forth in the Agreement, Gillette and the Plaintiffs agreed to a forum selection

clause which read:

> [E]ach party to this Agreement, by its execution hereof, (a) hereby irrevocably submits to the exclusive jurisdiction of the state courts of the State of Delaware or the United States District Court located in the State of Delaware for the purpose of any Action *between the parties* arising in whole or in part under or in connection with this Agreement . . . .

Agreement § 12.12.1 (emphasis added).

Procter & Gamble was not a "party" to the Agreement. When Gillette and Plaintiffs

entered the Agreement, Procter & Gamble had no rights or interest in it. In fact Procter &

Gamble had no relationship with either party to the Agreement when Gillette and Plaintiffs

effectuated the Agreement.

The term "party" is not defined in the Agreement. Black's Law Dictionary defines party

simply as "[o]ne who takes part in a transaction <a party to the contract>." *Blacks Law*

---

(5th Cir. 1997).

3

*Dictionary* 1144 (7ᵗʰ ed. 1999). And although "party" is not defined in the Agreement, by

looking at other relevant sections of the Agreement the Court can deduce that Gillette and

Plaintiffs intended to limit the definition of parties to exclude anyone other than themselves. For

instance, Section 12.2 of the Agreement limits the benefits and liabilities of the Agreement to

"the parties hereto *and* their respective successors and permitted assigns." And the rights,

interests, and obligations under the Agreement may not be assigned or delegated except with

written approval of the "parties." Because the Agreement specifically makes reference to

"successors and permitted assigns" as distinct from parties, the Court finds that Gillette and

Plaintiffs intended to exclude "successors and permitted assigns" from the portions of the

Agreement that apply only to "parties." If Gillette and Plaintiffs had intended to apply the forum

selection clause to the parties *and* their successors *and* their assigns, they would have

specifically stated so, as they did in the other portions of the Agreement.

The plain meaning of the term parties in this Agreement could only apply to Gillette and

Plaintiffs, the signatories to the Agreement. Therefore, the forum selection clause – clearly

limited to "any Action between the parties" – does not apply to a case in which Plaintiffs, a party

to the Agreement, have sued Procter & Gamble, a non-party to the Agreement.

2.      The "closely related" test does not apply to this forum selection clause, and
        Procter & Gamble cannot enforce the forum selection clause as a successor or
        permitted assign.

Procter & Gamble argues that it can enforce the forum selection clause of the Agreement

as a non-signatory to the Agreement because Procter & Gamble is "closely related" to Gillette, a

signatory to the Agreement. However, "[i]n order to bind a non-party to a forum selection

clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir.1993) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir.1988)).

Because Procter & Gamble did not purchase Gillette until four months after Gillette entered the Agreement with Plaintiffs, neither party could foresee that Procter & Gamble was "closely related" to the transaction such that Plaintiffs could foresee Procter & Gamble binding them to the forum selection clause in the Agreement.

But Gillette and Plaintiffs did foresee the possibility that Gillette would become affiliated with another company. And the parties made clear their intent to bind all successors, affiliates and permitted assigns to the Agreement *so long as* Gillette "assign[ed] any or all of its rights and interests . . . to one or more of its Affiliates." Agreement § 12.2. As the evidence presented to the Court demonstrates, Gillette made no assignment of the Agreement to Procter & Gamble. (Joint Motion Submission, Appx. 9.) Therefore, Procter & Gamble cannot claim the benefit of the forum selection clause in the Agreement between Gillette and Plaintiffs.

4.    The Court finds no reason to resort to equitable enforcement of a forum selection clause when the language of the Agreement is clear.

Procter & Gamble argues that the Court should enforce the Agreement's forum selection clause under the doctrine of equitable estoppel. The Court fails to find Procter & Gamble's equitable estoppel argument persuasive. The plain language of the Agreement is clear — Procter & Gamble could reap the benefits of the forum selection clause by having its wholly owned subsidiary, Gillette, execute an assignment of the Agreement to Procter & Gamble. Once

Gillette assigns its rights and obligations under the Agreement to Procter & Gamble, Procter & Gamble would be treated as a "party" to the Agreement. This assignment never took place. Therefore, the Court need not resort to equitable enforcement of a forum selection clause Procter & Gamble chose not to avail itself of when purchasing Gillette.

### B.    Plaintiffs' claim for tortious interference with a contract.

Procter & Gamble moves the Court to dismiss Plaintiffs' tortious interference claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Procter & Gamble argues that Plaintiffs cannot state a claim for torious interference with a contract because Procter & Gamble is an affiliate of Gillete, thereby stepping into the shoes of Gillette under the contract, and Plaintiff failed to allege that Procter & Gamble acted in bad faith, an essential element of torious interference.

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Such dismissals are rare, *Clark v. Amoco Prod Co.*, 794 F.2d 967, 970 (5th Cir. 1986), and should only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitled him to relief." *Conley v. Gibson*, 255 U.S. 41, 45-46 (1957); *Leffall v Dallas Indep Sch Dist*, 28 F.3d 521, 524 (5th Cir. 1994) ("[A] claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.") In other words, a Rule 12(b)(6) dismissal is not warranted merely because the court "believes the plaintiff is unlikely to prevail on the merits." *Clark*, 794 F.2d at 970. "Even if it seems 'almost a certainty. . . that the facts alleged cannot be proved to support the legal claim,' the claim may

6

not be dismissed so long as the complaint states a claim." *Id.* (quoting *Boudelouche v. Grow Chem. Coatings Corp.*, 728 F.2d 759, 762 (5th Cir. 1984)). However, 12(b)(6) is not a "toothless tiger." *Dartmouth Rev. v. Darthmouth Coll.*, 889 F.2d 13, 16 (1ˢᵗ Cir. 1989). A complaint must set forth factual allegations respecting each material element necessary to sustain recovery on some actionable theory. *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*, 332 F.3d 6 19 (1ˢᵗ Cir. 2003). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993).

### 1.   Texas law applies to Plaintiffs' tortious interference claim.

Procter & Gamble argues that the Court should apply Delaware law to Plaintiff's tortious interference claim because the Agreement contains a choice of law clause that mandates the application of Delaware law to "all Actions arising . . . in connection []with" the Agreement. Procter & Gamble's single paragraph of analysis on this issue misses the mark. (Def.'s Motion to Dismiss 15-16.) First, Procter & Gamble fails to fully analyze the choice of law issue according to Texas's choice of law rules. Second, Procter & Gamble cites to forum selection clause cases rather than to choice of law cases to support its argument that the Court must apply Delaware law in this case.[2]

---

[2]Although Procter & Gamble does devote another paragraph of analysis to this issue in its reply brief, the cases cited there also miss the mark because they are cases in which a choice of law provision is applied to a tort claim between the two contracting parties. Further, what Procter & Gamble fails to mention is that the Fifth Circuit case it uses as precedent, *Tel-Phonic Servs., Inc. v TBS Int'l, Inc.*, 975 F.2d 1134, 1142 (5ᵗʰ Cir. 1992), applied the contractual choice of law provision to a fraud action because Section 201 of the Restatement (Second) of Conflicts of Law specifically requires it. Procter & Gamble cites to no such provision in the Restatement

In a diversity case, the court must apply the choice of law rules of the forum state to determine which state's laws apply to the issue at hand. *Marchesani v. Pellerin-Milnor Corp.* 269 F.3d 481, 485 (5th Cir. 2001). In analyzing choice of law issues, Texas courts apply the Restatement (Second) of Conflicts (1971). While Texas courts do give considerable weight to choice of law provisions when parties contract to have their disputes governed by a particular state's laws, Texas courts follow the Restatement (Second) of Conflicts of Law § 187 (1971). *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677-78 (Tex. 1990). Section 187 provides that "[t]he law of the state chosen *by the parties* to govern *their contractual rights and duties* will be applied if . . . ." The Restatement assumes that choice of law provisions apply only to the parties to the agreement to resolve contractual issues between the parties.

When a claim sounds in tort rather than contract and the alleged tortfeasor is a non-party to the contract, Texas courts follow the "most significant relationship" test found in the Restatement (Second) of Conflicts of Law § 145. *Spence v. Glock,* 227 F.3d 308, 311 (5th Cir. 2000) ("Texas courts use the ALI Restatement's 'most significant relationship test' for all choice of law cases except those contract cases in which the parties have agreed to a valid choice of law clause." (citing *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex. 1984); *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex. 1979)).

Section 145 states:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant

---

regarding a tortious interference claim.

8

relationship to the occurrence and the parties under the principles stated in § 6.[3]
(2) Contacts to be taken into account in applying the principles of § 6 to determine the
law applicable to an issue include:

      (a) the place where the injury occurred,

      (b) the place where the conduct causing the injury occurred,

      (c) the domicil, residence, nationality, place of incorporation and place of
business of the parties, and

      (d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to
the particular issue.

Applying the factors in Section 145 to the facts of this case, Texas has the "most significant

relationship to the occurrence and the parties."

Plaintiffs allege that Procter & Gamble interfered with their contractual relationship with

Gillette. Plaintiffs reside and their company, Zooth, is located in Wichita Falls, Texas. Gillette

was incorporated in Delaware, but its headquarters were located in Massachusetts at the time of

the alleged injury. Procter & Gamble was incorporated and domiciled in Ohio. In a torious

interference case, the location of the actions giving rise to the injury are difficult to define.

However, in this case, the effects of the alleged conduct and injury would have been felt in

---

[3]Section 6 of the Restatement (Second) of Conflicts of Laws states:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state
on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of
law include

      (a) the needs of the interstate and international systems,

      (b) the relevant policies of the forum,

      (c) the relevant policies of other interested states and the relative interests of those states
in the determination of the particular issue,

      (d) the protection of justified expectations,

      (e) the basic policies underlying the particular field of law,

      (f) certainty, predictability and uniformity of result, and

      (g) ease in the determination and application of the law to be applied.

Wichita Falls, Texas. And none of the alleged acts or injuries took place in Delaware.

Because all Plaintiffs reside in Texas, the Agreement was between a Texas company and a company headquartered in Massachusetts, Procter & Gamble is an Ohio company with contact all over the world, and the effects of the tortious interference were allegedly felt in Texas, Texas has the most significant relationship, as opposed to any other state, to the occurrence and the parties. Therefore, Texas's substantive law regarding tortious interference applies.

2.    Plaintiffs failed to state a claim under Texas law for toritious interference.

Under Texas law, to state a claim for intentional interference with a contract, Plaintiffs must plead facts that would satisfy these elements: (1) the existence of a contract subject to interference, (2) the act of interference was willful and intentional, (3) such intentional act was a proximate cause of plaintiff's damage, and (4) actual damage or loss occurred. *Juliette Fowler Homes v. Welch Assocs.*, 793 S.W.2d 660, 664 (Tex.1990).[4]

Plaintiffs complaint, which is the original state-court petition, alleges very general allegations regarding Procter & Gamble's interference with Plaintiffs' contractual relationship with Gillette. Paragraph 6.3 of Plaintiffs' complaint contains the allegations against Procter & Gamble:

---

[4]Although Procter & Gamble argues that it cannot be held liable for interfering in with the contract of its wholly-owned subsidiary, Texas courts have treated this issue as one of privilege. *See Affiliated Computer Servs., Inc v Caremark, Inc.*, 49 F. Supp. 2d 882, 884 (N.D. Tex. 1999). Further, although until recently Texas law required a plaintiff to also plead lack of justification or excuse, now the "privilege of legal justification or excuse in the interference of contractual relations is an affirmative defense upon which the defendant has the burden of proof." *Juliette Fowler Homes*, 793 S.W.2d at 664 n. 7 (quoting *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex.1989)).

Upon announcing its takeover of Gillette and its assumption of Gillette operations, P&G unlawfully and without justification undertook to interfere with and otherwise prevent Gillette and/or Zooth from fully performing under the Contract and thereby damaging the Plaintiffs. Among other things, P&G interfered with the marketing of Zooth products, Gillette's efforts to expand and continue to develop Zooth's products and markets, its stability in the marketplace and its employment of key employees.

Plaintiffs fail to allege specific facts that, if true, would allow them to recover from Procter & Gamble on a tortious interference claim. However, the Court need not dismiss Plaintiffs' complaint yet. Plaintiffs requested that if the Court found their pleading failed to state a claim, the Court also grant them leave to amend their pleading rather than dismiss their complaint.

**D.    The Court grants Plaintiffs leave to amend their complaint to allege with more particularity facts that give rise to a cause of action against Procter & Gamble for tortious interference with a contract.**

In Plaintiffs' Response to Procter & Gamble's Motion to Dismiss, Plaintiffs' request, in the alternative, the opportunity to amend their pleadings pursuant to Fed. R. Civ. P. 15(a). Rule 15 provides that leave to amend "shall be freely granted when justice so requires." And Rule 15(a) "evinces a bias in favor of granting leave to amend." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

Plaintiffs filed this suit in state court. Defendant removed the case to this Federal District Court. Plaintiffs have not amended their pleadings since filing their original state-court petition. Therefore, the Court finds no reason to deny Plaintiffs' request to amend. Plaintiffs may amend their pleadings to comport with this opinion and order, alleging with more particularity the facts upon which they base their claim of tortious interference with a contract.

**E. The Court need not sever this case and transfer to Delaware.**

Procter & Gamble argues pursuant to Federal Rules of Civil Procedure 21 and 42(b) and

28 U.S.C. § 1404(b) that the court should sever Procter & Gamble from this action and transfer

the case to the state district court in Delaware or stay this suit pending the outcome of an

ongoing action in Delaware. However, Procter & Gamble fails to provide the Court with any

analysis under 28 U.S.C. § 1404(b) of the factors the Court must weigh in deciding whether

transfer is appropriate. Instead Procter & Gamble continues to make the failed argument that the

forum selection clause points to Delaware as the appropriate forum. Further, Procter & Gamble

fails to make even the threshold showing to the Court that this action could have been properly

initiated in the District of Delaware. Therefore, the Court denies Procter & Gamble's motion to

transfer venue under 28 U.S.C. § 1404(b).

### III. CONCLUSION

The Court finds that Procter & Gamble was not a "party" to the Agreement between

Gillette and Plaintiffs. Based on that finding, Procter & Gamble cannot avail itself of the

Agreement's forum selection clause. Therefore, Procter & Gamble's motion to dismiss for lack

of subject matter jurisdiction and improper venue is DENIED. The Court further finds that the

substantive law of Texas applies to Plaintiffs' claims against Procter & Gamble. And although

Plaintiffs have not specifically alleged facts sufficient to avoid dismissal under Fed. R. Civ. P.

12(b)(6), Plaintiffs are given 20 days to file an amended complaint. If Plaintiffs' amended

complaint fails to state a claim under Texas law for tortious interference, Procter & Gamble may

reurge its 12(b)(6) motion to dismiss. Finally, Procter & Gamble's motion to transfer venue

under 28 U.S.C. § 1404(b) is DENIED.

12

ENTERED: February 8, 2007

It is so ORDERED.


JERRY BUCHMEYER
SENIOR DISTRICT JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS